22 N.J. Super. 544 (1952)
92 A.2d 117
SAMUEL FRIEDMAN, DOROTHY FRIEDMAN, FELICIA FEINSWOG, FRANCES FEINSWOG AND FREDERICK FORREST, PLAINTIFFS,
v.
GOMEL CHESED HEBREW CEMETERY ASSOCIATION, OF ELIZABETH, N.J., A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 22, 1952.
*545 Mr. Simon L. Fisch, attorney for plaintiffs (Mr. Abraham J. Slurzberg, of counsel).
Messrs. Weltchek & Weltchek (Mr. Harry Weltchek appearing), attorneys for defendant.
COLIE, J.S.C.
The plaintiffs in this suit are the children of Susie and Jacob Feinswog, who seek to enjoin the Gomel Chesed Hebrew Cemetery Association from interfering with the removal of the body of Susie Feinswog from her resting place in the defendant cemetery to the Beth Israel Cemetery located in Woodbridge, New Jersey.
Susie Feinswog died in 1939. She was the wife of Jacob Feinswog who died in 1950. Subsequent to her death, her body was prepared for burial by a committee in accordance with the tenets of orthodox Jewry, and she was interred in the Gomel Chesed Cemetery in consecrated ground.
*546 After her death and within a period of a year or thereabouts, Jacob Feinswog purchased the adjacent plot for the purpose of having his remains interred alongside of those of his wife.
After the prescribed period had elapsed after Susie Feinswog's death, there was erected over Susie Feinswog's grave and over the adjacent unoccupied grave, a monument, and on that part of the monument over Susie Feinswog's grave there was an inscription identifying the grave as hers. On the monument over the adjacent grave there was no inscription.
A still-born child of one of the children was buried in the same cemetery and a monument, according to the testimony, erected over its grave. This suit seeks to enjoin the cemetery from interfering with the removal of not only Susie Feinswog's body but with that of the still-born child.
There was a dispute as to whether or not the body of Susie Feinswog had, in fact, been buried in accordance with the tenets of the orthodox faith. The dispute narrowed down, as I recall it, to whether or not the casket in which she was interred had had removed from it before her interment the white satin lining. I find as a fact that her burial was in accord with orthodox ritual.
The situation continued as I have outlined it until the date of Jacob Feinswog's death. There is testimony in this case from several of his children to the effect that shortly before his death he expressed a wish that he rest with the members of his child's family, that they should all be together. Acting upon that stated wish, the husband of one of the daughters investigated and as a result a plot in the Beth Israel Cemetery in Woodbridge was purchased. It was purchased with the tacit or expressed agreement of all of the children, with the possible exception of Mr. Forrest who lived in Red Bank and who, not wishing to be buried in that plot, expressed no opinion, so far as I now recall.
It is said that the literature which the son-in-law, Mr. Friedman, got from the Beth Israel Cemetery in Woodbridge *547 was shown to Jacob during his lifetime and that he acquiesced in what they were planning to do. The testimony is that Jacob, during his lifetime, paid his requisite portion.
This court is not bound by the ecclesiastical law. That is too well established to need citation of authorities. But it is equally well established that, while not bound by the ecclesiastical law in any given case, the court, in arriving at its decision, should consider the ecclesiastical law and give to it such weight as will bring out an equitable result.
We have to go back, as I see it, to the intent that existed at the time that Susie Feinswog was buried. She was a practitioner of the rules of the orthodox Jewish faith, at least to the extent that she was a strict adherent to the dietary laws. And it has been testified that that fact is a measure of the orthodoxy of the person observing those laws. She was in essence a practitioner or an adherent to the tenets of the orthodox Jewish faith and I assume that it was with her approval that she was buried in consecrated ground.
Whether or not she or her husband, Jacob, was thoroughly familiar with the rabbinical law I cannot say, nor can anyone else, but it seems to me to have been established by the testimony of Rabbi Teitz and Rabbi Meyer Cohen that, stated in lay language, the disinterment of the bodies buried in hallowed ground is not in accordance with rabbinical law.
There are certain exceptions to that law: one where the body is disinterred for the purpose of reinterment in the Holy Land; one where the condition of the grave jeopardizes the body; one where at the time of interment there is a public expression of an intent at a later date to remove the body to another burying place; and when a body has been interred through error in a wrong plot. This removal would not fall within any of those exceptions.
It seems to me there was a clearly implied intent on the part of Jacob that Susie's body should be at all times in the Gomel Chesed Cemetery. I arrive at that conclusion by reason of the fact that, at the end of the prescribed period *548 of mourning, he provided for the installation of this monument which was to cover the graves of himself and his wife.
I cannot lose sight of the fact that it has been testified before me that in accordance with the rabbinical interpretation of the appropriate section of the Hebrew law, it would amount to a desecration of the Gomel Chesed Cemetery if the body of Susie was moved.
There are and there have been testified to methods by which, in accordance with the Rabbinical law, that desecration could be wiped out, if those are the correct words. It was testified that if this removal of Susie's body took place, desecration would follow, and that the only way in which that bar sinister of desecration could be removed would be by a visitation of the trustees and the officers of the Gomel Chesed Cemetery to each occupied grave in that cemetery, and before each grave those individuals asked forgiveness for the act of desecration that had been committed.
In determining this case, I feel that I must go back and try to determine whether or not this removal of Susie Feinswog's body would conform with the intent of Jacob from 1939 to 1950. It seems to me that his action at the time of the burial of his wife, and from 1939 down to 1950, is persuasive that he intended that his remains be placed beside those of his wife. The fact that the still-born child at some undetermined period was buried in that cemetery goes somewhat to reinforce that view. It is true that they were not adjacent. Nevertheless they were in the same cemetery and in consecrated ground. I do not think that the wish of the Feinswog children outweighs the respect which I should give to the Hebraic law and the respect of the wishes of Jacob.
There is doubt in my mind  just enough to shake my faith in the accuracy or the entire trustworthiness of the testimony of some of the children  arising out of the statement by Jacob Feinswog's sister that within a month or two before his death he had said that his wish was to be buried beside his wife.
*549 I have read every case cited by counsel in their briefs and my decision is predicated upon an excerpt from an opinion of Mr. Justice Cardozo in the case of Yome v. Gorman, 242 N.Y. 395, 152 N.E. 126, 47 A.L.R. 1165 (Ct. of App. 1926). I do not think I could take a better guide than that of Justice Cardozo, and I quote: "The wish of the deceased, even though legal compulsion may not attach to it * * * has at least a large significance * * *. Especially is this so when the wish has its origin in intense religious feeling * * *. Only some rare emergency could move a court of equity to take a body from its grave in consecrated ground and put it in ground unhallowed if there was good reason to suppose that the conscience of the deceased, were he alive, would be outraged by the change. Subordinate in importance, and yet at times not wholly to be disregarded, are the sentiments and usages of the religious body which confers the right of burial. * * * Even without contract, sentiments and usages, devoutly held as sacred, may not be flouted for caprice. They must be weighed in the balance with the motives and feelings that sway the acts of the survivors. Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous when removal at the instance of distant relatives or strangers would be arbitrary or cruel. The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose * * *. We have sought, not to declare a rule, but to exemplify a process. The considerations we have instanced and others of like order may move a court of equity to keep a grave inviolate against the will of the survivors."
So, in words which cannot match those of Justice Cardozo, I feel that to disturb the repose of the body of Susie Feinswog and the still-born child would be in violation of deeply held religious beliefs and would run counter to the wish of the deceased, Susie Feinswog. Therefore it follows that the relief sought in the complaint must be denied.