**S. T. MALLEN and Lester Cohn, Appellants,**

**v.**

**Brenda Frumin MALLEN and Jerry Marsh, Appellees.**

Court of Appeals of Tennessee,

Eastern Section.

Oct. 25, 1974.

Certiorari Denied by Supreme Court March 3, 1975.

Weill, Ellis, Weems & Copeland, Chattanooga, for S. T. Mallen.

Howard I. Levine, Chattanooga, for Lester Cohn.

Berke, Berke & Berke, Chattanooga, for Brenda Frumin Mallen.

OPINION

PARROTT, Judge.

This controversy involves a widow's attempt to remove the remains of her husband from a burial plot owned by his family to another cemetery.

On March 21, 1972, Steven Mallen was killed in an airplane crash and his body

was buried in a family plot in Mizpah Cemetery at Chattanooga. After obtaining a disinterment permit from the Department of Public Health, on July 3, 1974, Brenda Frumin Mallen, widow of the deceased, proceeded to disinter the remains. On the same day as the attempted disinterment, S. T. Mallen, father of the deceased, and Lester Cohn, vice-chairman of the Control Board of the Mizpah Cemetery, commenced this action by filing a complaint in the chancery court and obtained a temporary restraining order prohibiting the removal of the body.

After a hearing on the merits, the chancellor dissolved the restraining order, directed the cemetery to permit the disinterment and entered judgment in favor of Brenda Frumin Mallen and against the plaintiff, S. T. Mallen, and his sureties for $150.00.

It is apparent from this record that since the death of Steven Mallen his parents and widow have not had a harmonious relationship. To the contrary, the parties have lived in continuous hostility. Very shortly after the death of Steven Mallen the parents filed litigation in federal court and later a suit in the chancery court against the widow concerning the family business. In fact, as the chancellor said, the relationship has "progressively worsened" into a state of bitterness.

The plot where Steven Mallen was buried was acquired by his father in 1962 and contained several grave sites. There is no question from the proof but that the elder Mallens intended to exercise control and dominion over the burial plot. They have refused to permit the widow to erect or place any marker, footstone or make changes or alteration in the grave site. It was the elder Mallens' testimony that a spot was being reserved beside Steven Mallen for the burial of his widow but there is no mention of places of burial for Brenda and Steven Mallen's children.

The plaintiffs place great stress upon the fact that the parties are Jewish and that the Jewish customs, traditions and canons of their religious faith do not favor disinterment. It is also emphasized that the soil in a Jewish cemetery is sacred ground and that "it is pleasing to a man to rest with his ancestors."

It is universally held in this country that courts of equity have jurisdiction in controversies between proponents and opponents of the disinterment and removal of remains. Beatty v. Kurtz (1829), 2 Pet. 566, 7 L.Ed. 521. In determining such controversies the courts do not permit the civil law to be circumscribed or superseded by the canon law of a religious faith. However, the tenets of the faith may have an indirect efficacy in determining whether a body may be disinterred or removed. See Goldman v. Mollen (1937), 168 Va. 345, 191 S.E. 627, where the court said:

"Jewish law, as such, is no more to be followed in Virginia than is Chinese law, but it may be shown competent and important to show the custom and wishes of those who observe its mandates, and this is particularly true when they believe that they are in part divine."

We find no cases in this state dealing with the disinterment of a body. In other jurisdictions there are numerous decisions. Where there is no statutory authority, it appears there is no universal rule to be applied but each case must depend upon its own facts and circumstances. 25A C.J.S. Dead Bodies § 4(1); 22 Am.Jur.2d, Dead Bodies, Sec. 26. See annotation and cases collated in 21 A.L.R.2d 472.

While the right to have a body remain undisturbed is not absolute, the courts do not ordinarily permit disinterment unless there is a showing that it is necessary and that the interests of justice require it. An examination of the numerous cases reveals the courts have given varied reasons in permitting or denying disinterment. Usually the decedent's wishes and requests as to a particular place of burial are recog-

nized and heeded. When there has been no request or express wish on the part of the decedent and there arises a conflict among a spouse and blood relations, or cemetery, or religious authorities, the wishes of the spouse seem to command first consideration when coupled with good reason.

In past cases, many justifications have permitted disinterment by a surviving spouse. A few which might be mentioned are: the fulfillment of the surviving spouse's expectation, where it was understood that the original interment was to be only temporary; the attainment of side-by-side burial plots; reinterment in a location more accessible to the spouse; reinterment in a location removed from family hostility.

Of the several cases permitting disinterment on the basis of hostility, a leading one is Bradley v. Burgis (La.App.), 25 So. 2d 753. The court there noted:

" . . . where, after that first interment, there have arisen conditions which make it practically impossible for the widow to visit the tomb without being constantly reminded of the terrific hostility towards her of the other members of her husband's family and without being subjected to the annoyance to which the plaintiff here was constantly subjected, she should be permitted to remove the remains of her husband to a resting place of her own selection."

See also Sacred Heart of Jesus P.N.C. Church v. Soklowski, 159 Minn. 331, 199 N.W. 81; Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878; Brake v. Mother of God's Cemetery, 251 Ky. 667, 65 S.W.2d 739.

Pettigrew v. Pettigrew, supra, is looked upon as a leading decision as to rights and feelings of the proponents and opponents of disinterment. In that case the Pennsylvania court held:

"First. That the paramount right is in the surviving husband or widow, and, if the parties were living in the normal relations of marriage, it will require a very strong case to justify a court in interfering with the wish of the survivor. Secondly. If there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified, it may be, by circumstances of special intimacy or association with the decedent. Thirdly. How far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail. Fourthly. With regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent, and reserving always the right of the court to require reasonable cause to be shown for it."

In the case before us, when we give due consideration to the wishes of the widow, along with the bitter, hostile feeling that the husband's parents have exhibited, we are of the opinion the chancellor reached a fair and equitable result. Let the assignment of error be overruled and the decree as entered affirmed with costs taxed to appellant.

Further, in an effort to assure all parties their rights of further review, the restraining order issued in this cause shall remain in effect for a period of ten (10) days after the filing of this opinion.

SANDERS and GODDARD, JJ., concur.