Rockingham
No. 82-183

SISTER HONORA J. REARDON *& a.*

v.

BROTHER ROGER LEMOYNE *& a.*

December 23, 1982

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth (*John H. McEachern, Dan W. Thornhill,* and *Alice K. Page* on the brief, and *Mr. McEachern* orally), for the plaintiffs.

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover, and *Ouellette, Hallisey, Dibble & Tanguay,* of Dover (*James H. Schulte* and *Dennis L. Hallisey* on the brief, and *Mr. Schulte* orally), for the defendants.

Bois, J.    These are cross-appeals from a Superior Court (*Nadeau,* J.) decision granting a motion to dismiss declaratory judgment proceedings against three of the defendants, and denying the motion as to the remaining defendants, for whom the trial court rendered a favorable ruling on the merits. We hold that the trial court erred in dismissing two of the parties defendant and in failing to hold a hearing with respect to the plaintiffs' rights against the defendants who were not dismissed. Accordingly, we reverse and remand for a hearing on the merits to determine the plaintiffs' rights, if any, vis-a-vis these defendants.

The plaintiffs, members of a religious order which is part of the *laity* of the Roman Catholic Church, are four nuns who worked at the Sacred Heart School, a private parochial institution in Hampton. Three of the plaintiffs were teachers, while the fourth plaintiff was the principal of the school. As part of the parochial school system of the Diocese of Manchester, the school is administered and operated by the defendants, the Bishop of the Diocese of Manchester, the Diocesan Superintendent of Schools, the Diocesan School Board, and ten individual members of the Sacred Heart School Board. The plaintiffs have each taught for over twenty-five years in the diocese and have each spent between five and twelve years at the Sacred Heart School.

In April 1981, the plaintiffs signed similar written contracts of employment with the Sacred Heart School, as required by the Diocese of Manchester. The contract form was provided by the Diocesan School Board. According to part one of the contracts, the school agreed to employ each plaintiff for the 1981–82 school year, which was to expire no later than June 30, 1982. Under part four, which incorporated by reference the "Diocese of Manchester, School Policy Handbook" (handbook), each plaintiff agreed "to conform and comply with all laws, rules, regulations and policies" of the diocese, relating, *inter alia*, to "absences, leaves, salary guides, hiring practices, certification, evaluation, separation, dismissal [and] faculty meetings . . . ."

The contracts contained specific provisions relating to the termination of employment. Although part one of the contract clearly delineated that the employment relationship was to last only for the 1981–82 school year, part five provided that the parties could terminate the contract by mutual consent at any time. Part seven stated that "[t]his contract shall terminate upon the retirement of the teacher [or principal]", which was to occur at the end of the school year following the employee's seventieth birthday. In addition, under part eight, the Sacred Heart School Board could unilaterally terminate the contract if the employee's position was eliminated or if the school was reduced in size or shut down.

The handbook, incorporated by reference under part four of the contract, contained provisions governing the renewal of the employment relationship. It stated that participation in certain activities constituted a condition of employment for the following year. It also stated that if the contract of a teacher or principal was not to be renewed, then the individual had to be notified in writing before March 15, and be given well-documented reasons for the non-renewal.

Finally, the contract provided detailed procedures for the dismissal of employees. It stated that the Sacred Heart School Board could dismiss a teacher or principal for any one of eight listed reasons, such as professional incompetence, failure to obtain the requisite certification, or failure to profess a philosophy of life consistent with Catholic beliefs. According to part six of the contract, a teacher or principal could not be dismissed before the expiration date of the contract unless she received written notification of the cause for such dismissal. Upon making a timely request, an employee faced with dismissal had a right to a hearing before the Sacred Heart School Board. If aggrieved by the board's decision, the employee could then appeal to the Diocesan School Board.

In January 1982, the defendant superintendent of schools for the Diocese of Manchester delivered to each of the plaintiffs a notice stating that he was recommending that the Sacred Heart School Board not rehire them. The notice listed seven reasons which formed the basis for the superintendent's recommendation. On February 23, 1982, the superintendent wrote a letter to the Sacred Heart School Board, informing the board of his objection to the "renewal" of the plaintiffs' contracts. In accordance with section 4112.1 of the handbook, the letter stated that the local school board did not have the authority to retain any teacher or principal over the superintendent's objections. One day later, on February 24, 1982, the Sacred Heart School Board notified each of the plaintiffs in writing that their contracts were not to be "renewed" for the 1982–83 school year because of the superintendent's expressed objections.

On March 1, 1982, the plaintiffs informed the Sacred Heart School Board that they considered the board's letter of February 24 to be a dismissal and that they therefore requested a public hearing before that board pursuant to the terms of their contracts. The board denied this request, stating that the letter constituted a notice of non-renewal for which a public hearing was not required. The plaintiffs' subsequent request for a hearing before the Diocesan School Board was never granted.

On March 2, 1982, the plaintiffs filed a petition for declaratory judgment in superior court, requesting the court to construe their employment contracts. In the petition, they first sought a declaration that the defendants' decision to end their respective employment relationships constituted a "dismissal" which entitled them to the procedural safeguards outlined in their contracts. Second, they asked the court to find that the defendants had violated their constitutional rights to due process and equal protection of the law. Third, they sought a ruling that they could only be dismissed for cause based upon substantial evidence, and that the cause in this case was not sufficient. Finally, in the event that the trial court found that the defendants' action constituted "non-renewal" of the contracts, the plaintiffs asked the court to declare that the reasons given by the diocesan superintendent, in his January letter to the plaintiffs, were "not sufficient."

The defendants filed a motion to dismiss, claiming, *inter alia*, that the court's assumption of jurisdiction in the matter, as well as any relief it might grant, would violate the constitutionally mandated provision regarding separation of church and State. *See* U.S. CONST. amend. I. Following a hearing on the motion, the trial court ruled that the first amendment to the United States Constitution precluded the court's assumption of jurisdiction over the Bishop, the

superintendent, and the Diocesan School Board. The court therefore dismissed the proceedings against these defendants. The court found that it could exercise jurisdiction over members of the Sacred Heart School Board; however, it ruled, without holding further proceedings, that the plaintiffs could not prevail on the merits against these defendants. The plaintiffs and all the defendants appeal from this decision.

The appeals raise three central issues. The first and most complex question relates to the propriety of the trial court's jurisdictional rulings. The plaintiffs argue that the trial court erred in ruling that the first amendment precluded the court from assuming jurisdiction over the Bishop and the superintendent. The plaintiffs apparently accept the view that the Diocesan School Board was not a legal entity which could be sued, and therefore they do not challenge the court's finding that jurisdiction did not exist over that body. The defendants, for their part, argue that, not only did the trial court correctly rule that it lacked jurisdiction over the Bishop, the superintendent and the Diocesan School Board, but that it should have further ruled that jurisdiction did not exist over the Sacred Heart School Board members.

■■ The first amendment, as applied to the states through the fourteenth amendment, requires us to maintain the separation of church and State. *Everson v. Board of Education,* 330 U.S. 1, 15–16 (1947). The constitutional mandate prohibits the courts from intervening in religious disputes involving matters of doctrine, discipline, faith, or internal organization. *Jones v. Wolf,* 443 U.S. 595, 602 (1979); *Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709 (1976); *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727 (1871).

■■ Religious entities, however, are not totally immune from responsibility under the civil law. In religious controversies involving property or contractual rights outside the doctrinal realm, a court may accept jurisdiction and render a decision without violating the first amendment. *Jones v. Wolf,* 443 U.S. at 602; *see Graffam v. Wray,* 437 A.2d 627, 631 (Me. 1981); *Baugh v. Thomas,* 56 N.J. 203, 208, 265 A.2d 675, 677–78 (1970); *W. Pa. Conf., U. Meth. Ch. v. Everson E. Ch.,* 454 Pa. 434, 439, 312 A.2d 35, 38 (1973). As one commentator has recognized, it would be unfair and illogical to deny access to the civil courts in non-doctrinal matters to parties who have voluntarily entered into civil contracts. *See* Ellman, *Driven From the Tribunal: Judicial Resolution of Internal Church Disputes,* 69 CAL. L. REV. 1378, 1402–03 (1981). The United States Supreme Court has thus approved the use of a "neutral principles of law" approach for the resolution of non-doctrinal disputes. *See Jones*

*v. Wolf*, 443 U.S. at 602–04. Under this approach, the courts apply well-defined, objective, and secular rules of law, thereby avoiding any impermissible inquiry into religious doctrine. *Id.* at 603; *see Waters v. Hargest*, 593 S.W.2d 364, 365 (Tex. Civ. App. 1979).

■ In this case, the record reveals that while the plaintiffs entered into written civil contracts with only the Sacred Heart School Board, both the Bishop and the superintendent were closely involved in the administration of the school, and the school board members acted as authorized agents of these officials. The record further shows that the Bishop, the superintendent, and the Sacred Heart School Board members all had religious and civil functions within the hierarchy of the Roman Catholic Church. Thus, unlike the trial court, we find no basis for treating the Bishop and the superintendent differently than the Sacred Heart School Board members on the question of jurisdiction. Jurisdiction either existed over all of these defendants or over none of them. The critical question in determining whether the trial court should have accepted jurisdiction is whether the resolution of the dispute would have involved doctrinal matters of the Roman Catholic Church. *See Jones v. Wolf*, 443 U.S. at 602; *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969).

As noted above, the plaintiffs were members of the church laity who essentially sought four rulings by the trial court: (1) that they had been "dismissed" from their positions and therefore were entitled to the procedures enumerated in their contracts; (2) that the defendants had violated their constitutional rights by failing to provide them with certain procedural rights, such as the right to a hearing, the right to produce evidence, and the right to cross-examine witnesses; (3) that they could only be dismissed for cause based upon substantial evidence, and that the cause in this case was not sufficient; and (4) that if their contracts were properly viewed as simply having been "non-renewed," then the reasons given by the superintendent were "not sufficient" or "well documented."

■ It is clear from the foregoing discussion that civil courts are permitted to consider the validity of non-doctrinal contractual claims which are raised by parties to contracts with religious entities. This requires the courts to evaluate the pertinent contractual provisions and extrinsic evidence in cases of ambiguity, to determine whether any violations of the contract have occurred, and to order appropriate remedies, if necessary.

The plaintiffs' first and second requested declarations fell within these recognized powers. In addressing the first request, namely, whether the plaintiffs had been "dismissed," the trial court would

have had merely to consider the facts of the case in light of the *contractual* provisions governing dismissal and, if necessary, extrinsic evidence of dismissal practices at the Sacred Heart School and elsewhere within the diocese. The upshot of this inquiry would have been a determination whether the plaintiffs were entitled to the dismissal procedures listed in their contracts. *See Abyssinia Missionary Baptist Ch. v. Nixon,* 340 So. 2d 746, 748 (Ala. 1977); *Baugh v. Thomas,* 56 N.J. at 208, 265 A.2d at 677. *See generally Ellman, supra* at 1423–28. The inquiry would not have touched upon doctrinal matters and would not have placed the plaintiffs in a posture different from other lay persons who entered into employment contracts with the defendants.

■ Similarly, a ruling on the second request would have required the trial court to determine only whether the plaintiffs' *contracts* gave them a right to certain procedures under the State or Federal Constitutions. If the contracts did not specifically provide for these constitutional procedures and if "State action" were not present, then the court would have had to rule that the defendants, as private entities, were not subject to such constitutional mandates. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349–50 (1974); *State v. Miller,* 117 N.H. 67, 68, 369 A.2d 197, 198 (1977). Once again, the court's inquiry would not have involved religious doctrine or practice. *See Presbyterian Church v. Hull Church,* 393 U.S. at 449. Thus, we hold that the trial court should have ruled on the first and second claims raised by the plaintiffs because neither of these claims concerned doctrinal matters.

■ While the above-mentioned claims clearly fell within the court's jurisdiction, the third and fourth requested declarations, regarding the sufficiency of specific reasons for non-renewal or dismissal, would require a more cautious approach. This inquiry would also focus initially on the relationship between the actions taken by the defendants and any *contractual* grounds or procedures for non-renewal or dismissal. To the extent that the contract specified, and the defendants alleged, any secular reasons for non-renewal or dismissal, the court could properly have ruled on the sufficiency of such reasons. Such grounds could, for example, include a teacher's alleged failure to get State certification. However, other contractual grounds for non-renewal or dismissal may be found to involve doctrinal judgments which are clearly beyond the judicial sphere of authority. *See Jones v. Wolf,* 443 U.S. at 602.

In sum, we hold that the trial court should have accepted jurisdiction over the Bishop, the superintendent, and the Sacred

Heart School Board members. The court should have ruled on the requested declarations within the limits mentioned. While we recognize the difficulty of the trial court's task, we believe that this task can be facilitated by keeping in mind the distinction between non-doctrinal matters, wherein jurisdiction lies, and matters involving doctrine, faith, or internal organizations, which are insulated from judicial inquiry. We urge all parties to remain cognizant of this distinction in future proceedings.

The second issue in these appeals concerns the propriety of the plaintiffs' petition for declaratory judgment. The defendants argue that the petition was inappropriate because the plaintiffs failed to exhaust their remedies through the church's internal dispute resolution process. In the alternative, the defendants argue that the plaintiffs were merely seeking an advisory opinion from the trial court, and that their remedy was not a petition for declaratory judgment, but rather an action at law for damages.

■■ We are not persuaded by these arguments. A religious organization may reduce the likelihood of judicial review of its internal non-doctrinal decisions, if it properly so provides. *See Jones v. Wolf*, 443 U.S. at 606. In this case, however, the plaintiffs' contracts, through the incorporated Diocesan School Policy Handbook, merely stated that aggrieved faculty and principals "shall have the right of appeal to the Diocesan School Board." Because the record shows that the plaintiffs requested and were not granted a hearing before the Diocesan School Board, we hold that they could properly initiate these proceedings.

■ In addition, we hold that a declaratory judgment action was a viable means for resolving the issues in this case. The plaintiffs were not seeking an advisory opinion concerning their future rights; they were seeking a determination as to their existing rights. *See* RSA 491:22; *see also State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 624, 448 A.2d 969, 974 (1982) (court has authority under declaratory judgment act to declare rights and obligations of parties). Furthermore, the declaratory judgment action was appropriate because it was filed while the plaintiffs were still teaching at the Sacred Heart School, and it might have prevented a potential invasion of their rights. *See Portsmouth Hospital v. Indemnity Ins. Co.*, 109 N.H. 53, 55–56, 242 A.2d 398, 400 (1968).

The third and final issue before us is whether the trial court erred in ruling on the merits of the plaintiffs' case against the Sacred Heart School Board members without first holding a full hearing on the merits.

As we mentioned above, immediately following the hearing on the defendants' motion to dismiss, and prior to the filing of an answer by the defendants, the trial court ruled that the Sacred Heart School Board members were proper parties, but that the plaintiffs could not prevail against them on the merits. At a conference in the trial judge's chambers prior to the hearing on the motion to dismiss, the plaintiffs' counsel indicated that he intended to call one witness in opposition to the motion. The trial judge stated that the focus of the hearing was to be the constitutional-jurisdictional issue and that he did not want a hearing on the merits.

At the motion hearing, the plaintiffs' counsel, as anticipated, called only one witness. The record shows that plaintiffs' counsel reasonably thought that the hearing related solely to the disposition of the pending motion. Although the questioning by plaintiffs' counsel occasionally strayed from the subject matter of the motion into the merits of the dispute, we do not find this fact a sufficient reason to have deprived the plaintiffs, whose counsel appears to have acted in good faith, of a full opportunity to present their case. *See V.S.H. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 780–81, 394 A.2d 317, 319 (1978); *see also Bosse v. Insurance Co.*, 88 N.H. 98, 102, 184 A. 359, 361 (1936) (defendant entitled to hearing on merits because it did not realize that merits were to be decided in preliminary motion hearing). Consequently, we remand for a hearing on the merits of the plaintiffs' petition as to the Sacred Heart School Board members as well as to the two defendants who were erroneously dismissed.

*Reversed and remanded.*

KING, C.J., concurred specially; the others concurred.

KING, C.J., concurring specially: While recognizing that civil courts have jurisdiction over non-doctrinal matters, the opinion of the majority properly recognizes that civil courts should not become involved in ecclesiastical questions. The distinction has troubled courts, *see Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–15 (1976), and a simple urging that the parties take note of this distinction in any future proceedings solves nothing, and invites protracted litigation.

Except for the parties involved and the emotional rhetoric, this is basically a simple case of an alleged breach of contract. *See Bodewes v. Zuroweste*, 15 Ill. App. 3d 101, 303 N.E.2d 509 (1973). The first factual determination the trial court must make is whether there was a breach of contract. If it determines that there was no breach of contract, the case will terminate. If the trial court finds that there

was a breach, or the defendants admit that they breached the contract, the court will have to determine the appropriate amount of damages, if any. Although the plaintiffs indicated that they were not seeking damages because of their vow of poverty, damages are generally considered an adequate remedy for breach of contract. Reinstatement is generally an inappropriate remedy for breach of a contract for personal services even if the party to render the services is willing to perform. *Allbee v. Elms*, 93 N.H. 202, 203, 37 A.2d 790, 791 (1944).