**Estelle R. WOLF, Plaintiff–Appellee,**

v.

**ROSE HILL CEMETERY ASSOCIATION and United Hebrew Cemetery Association, Defendants–Appellants.**

No. 94CA0586.

Colorado Court of Appeals, Div. IV.

Aug. 10, 1995.

Rehearing Denied Sept. 28, 1995.

Certiorari Denied March 25, 1996.

Clifton P. Schroeder, P.C., Clifton P. Schroeder, Denver, for plaintiff-appellee.

Gilbert Goldstein, P.C., Gilbert Goldstein, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

Defendants, Rose Hill Cemetery Association and United Hebrew Cemetery Association, appeal from the trial court's order granting plaintiff, Estelle R. Wolf, the right to disinter her father and sister from Rose Hill Cemetery (Rose Hill), an Orthodox Jewish cemetery operated by defendants. We affirm.

Plaintiff's father and sister have been buried in defendants' cemetery for 40 and 51 years, respectively. Before her death, plaintiff's mother expressed her displeasure with Rose Hill. After plaintiff's mother died, she was buried in a family plot plaintiff had purchased at another cemetery. Pursuant to her mother's wishes, plaintiff requested that defendants permit her to have her father and sister exhumed so that she could have them reinterred in the family plot at the cemetery where her mother is buried.

Although defendants had permitted the remains of at least 19 other people to be disinterred from Rose Hill and reinterred elsewhere, defendants refused plaintiff's request on the ground that, under Orthodox Jewish law, disinterments are permitted only under very limited circumstances. There was no written contract between defendants and any member of plaintiff's family delineating the terms and conditions of the burial of plaintiff's father and sister at Rose Hill, or describing the doctrines of Orthodox Judaism that would apply to their burial or disinterment. In addition, there were no corporate bylaws pertaining to this subject at the time of death of either plaintiff's father or sister or at the time of plaintiff's request for disinterment of their remains.

Plaintiff thereafter filed this equitable action in which she sought declaratory and injunctive relief. Following a bench trial at which conflicting expert testimony was presented by religious scholars on Orthodox Jewish theological law and its application to the issues in this case, the trial court denied plaintiff's request for an order requiring defendants to permit the disinterments. The trial court based its ruling in part on its determinations that Orthodox Jewish law prohibited the requested disinterments, that plaintiff's father was an Orthodox Jew, and

that, as such, he would have opposed being disinterred and reburied in a non-Orthodox Jewish cemetery.

On appeal, a division of this court confirmed that civil courts historically "have accepted jurisdiction to resolve, by applying equitable principles, burial and reinterment disputes which have traditionally been resolved by ecclesiastical courts," but reversed the trial court's ruling on the ground that the court had impermissibly resolved the conflicting theological conclusions of the religious experts in violation of the establishment clause of the First Amendment. The panel remanded the matter to the trial court for findings of fact and conclusions of law independent of religious doctrine and based on the application of objective, neutral principles of law. *Wolf v. Rose Hill Cemetery Ass'n*, 832 P.2d 1007 (Colo.App.1991) (*Wolf I*).

On remand, the trial court held a new trial at which the parties again presented conflicting testimony from religious scholars regarding Orthodox Jewish law. The court evaluated the evidence regarding various secular considerations, including those specifically enumerated in *Wolf I*, and determined that the equitable balance favored plaintiff's desire to have her father and sister exhumed and reburied in the family plot. Accordingly, the trial court granted plaintiff's request for disinterment of their remains.

### I.

In *Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877 (Colo.1994), the plaintiffs, whose deceased son's body was mistakenly cremated before an autopsy could be performed, asserted various claims, including a claim for conversion, against the individuals and entities involved in transporting and cremating the body. The supreme court affirmed the summary judgment entered for defendants on the issue of conversion on the ground that there is no property right in a dead body that would support an action for conversion.

Based on this authority, defendants first argue that the determination in *Wolf I* is no longer valid. More specifically, defendants

contend that plaintiff's request that they be ordered to permit the disinterments is based on the theory that she has a property right in the bodies of her father and sister and that, because under *Culpepper* there is no property right·in a dead body, her complaint failed to state a claim upon which relief may be granted. We disagree.

Contrary to defendants' contention, plaintiff did not assert that she has a property right in the remains of her father and sister, nor did she assert a claim based on such a property right.

Other states' courts have repeatedly recognized that civil courts of equity have jurisdiction over disputes involving the disinterment of remains. *See Weinstein v. Mintz,* 148 Misc.2d 820, 562 N.Y.S.2d 917 (1990); *Felipe v. Vega,* 239 N.J.Super. 81, 570 A.2d 1028 (1989); *Mallen v. Mallen,* 520 S.W.2d 736 (Tenn.1974); *Davis v. Congregation Chevra Torah Anshei Radishkowitz,* 21 Misc.2d 825, 192 N.Y.S.2d 174 (1959); *Baron v. First Bohorodczaner Sick & Benevolent Society,* 140 N.Y.S.2d 279 (1955); *Currier v. Woodlawn Cemetery,* 300 N.Y. 162, 90 N.E.2d 18 (N.Y.App.Div.1949).

■ None of these cases suggests that resolution of a dispute over disinterment implicates any property right in the remains. Similarly, here, plaintiff's equitable claim for declaratory and injunctive relief is not rooted in a purported property right in the remains of her father and sister.

## II.

In a related argument, defendants also contend that, to the extent that the decision in *Wolf I* relied on the neutral principles doctrine, the decision must be reconsidered here. Defendants assert that, if plaintiff's request is not grounded on any property claim to the remains of her father and sister, then the neutral principles doctrine does not apply because the doctrine only applies to "church property" cases.

■ Initially, we note that when an appellate court has rendered a decision on an issue in a case, the issue generally will not be reconsidered on appeal after remand. *United States National Bank v. Bartges,* 122

Colo. 546, 224 P.2d 658 (1950); *Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.,* 851 P.2d 233 (Colo.App. 1992). Accordingly, we review this contention only to the extent that it is premised on the absence of a claim by plaintiff of a property right in the remains, an issue not directly addressed in *Wolf I.* And, examining this argument in this light, we reject it.

■ The First Amendment, as applied to the states through the Fourteenth Amendment, requires us to maintain the separation of church and state. This constitutional mandate prohibits civil courts from intervening in religious disputes involving matters of doctrine, discipline, practice, or internal organization. *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Bishop & Diocese v. Mote,* 716 P.2d 85 (Colo.1986), *cert. denied,* 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986).

■ Thus, while civil courts have jurisdiction to render decisions in religious controversies involving rights outside the doctrinal realm, such disputes must be resolved by application of secular or neutral principles of law, thereby avoiding any impermissible inquiry into ecclesiastical questions. *See Reardon v. LeMoyne,* 122 N.H. 1042, 454 A.2d 428 (1982).

Contrary to defendants' assertion, nothing in *Wolf I* or the cases on which it relies suggests that application of the neutral principles doctrine either is limited to disputes involving church property or may not properly be applied to disputes touching upon religious conflicts that do not involve the disposition of church property. Indeed, other states' courts repeatedly have applied neutral principles to disputes involving the disinterment of remains. These courts, as did the division in *Wolf I,* recognize that, although civil courts may not resolve issues of religious law and practice, they may resolve, by the application of equitable principles, disputes involving the disinterment of remains. *See Mallen v. Mallen, supra; Davis v. Congregation Chevra Torah Anshei Radishkowitz,* 21 Misc.2d 825, 192 N.Y.S.2d 174 (1959).

### III.

Defendants next contend that, even if the neutral principles doctrine is applicable here, it was misapplied by the trial court on remand. They maintain that the trial court was required to follow the decision of the Beth Din of America, one of several Orthodox Jewish religious tribunals, on whether disinterments are permissible under Orthodox Jewish law. We disagree.

During the second trial, defendants presented evidence that, after the decision in *Wolf I* was issued, they consulted the Beth Din of America regarding the propriety of permitting the disinterment of the remains of plaintiff's father and sister. The Beth Din advised defendants that, under its interpretation of Orthodox Jewish law, the requested disinterments would not be allowed. Although defendants' expert conceded that an entity such as the Beth Din of America has no authority over the actions of any individual, including plaintiff, nonetheless defendants claim the Beth Din to be the highest ecclesiastical authority on Orthodox Jewish law and considered themselves bound by the Beth Din's determination.

On the other hand, plaintiff's rabbinical expert testified that different segments of the Orthodox Jewish community may consult one of several Orthodox Jewish tribunals, including the Beth Din, regarding matters of Jewish doctrine. He testified that Judaism is not a hierarchical religion and that a determination rendered by any one of the tribunals is not binding on the Orthodox Jewish community. Thus, the expert testified, the Beth Din's determination that the requested disinterments were impermissible is not an authoritative or binding interpretation of Orthodox Jewish law.

From this record, it is apparent that, although defendants assert that the Beth Din's determination was binding on the board of the United Hebrew Cemetery Association, the experts' testimony regarding the authority of the Beth Din and the effect of its decisions on the Orthodox Jewish community was not uniform. The experts also disagreed on whether Judaism is a hierarchical religion. Thus, in light of this conflicting expert testimony, the trial court, relying on *Wolf I,* correctly determined that it could not resolve the rabbinical experts' divergent theological conclusions without violating the establishment clause of the First Amendment.

The trial court, for two reasons, also correctly determined that defendants' assertion that the Beth Din had "supreme judicatory over the whole membership," even if it were accurate, was not dispositive of the issue here.

First, even if the trial court could have concluded that Judaism is a hierarchical religion and that the Beth Din's determination was binding on the Orthodox Jewish community, including the United Hebrew Cemetery Association, it could not have ruled that plaintiff was bound by that determination because, as defendants concede, plaintiff is neither a member of the Orthodox Jewish community, nor a member of the United Hebrew Cemetery Association, nor subject to the authority of the Beth Din. Thus, here, unlike in *Bishop & Diocese v. Mote, supra,* the parties are not subject to the same religious authority; therefore, the trial court was not bound by the Beth Din opinion.

Secondly, as previously determined, this case does not involve disputed ownership of church property. Hence, that a civil court may be required to defer to a decision of an authoritative ecclesiastical body on a religious issue involved in a dispute over ownership of church property, *see Bishop & Diocese v. Mote, supra,* simply is not relevant here. Instead, as the trial court recognized, in applying neutral principles to disputes involving the disinterment of remains, the customs and laws of the religious body that controls the cemetery are to be considered, but only given such weight as will produce an equitable result. *See Mallen v. Mallen, supra; Baron v. First Bohorodczaner Sick & Benevolent Society,* 140 N.Y.S.2d 279 (1955); *Friedman v. Gomel Chesed Hebrew Cemetery Ass'n,* 22 N.J.Super. 544, 92 A.2d 117 (1952). These considerations are subordinate to the desires of the decedent and the surviving relatives, *Felipe v. Vega, supra,* especially when applicable religious custom and usage is not uniform or settled. *Davis v.*

*Congregation Chevra Torah Anshei Radish-kowitz, supra.*

 Here, the trial court examined, *inter alia*, the evidence regarding the intent of plaintiff's father and the wishes of his spouse and other survivors; the lack of a written contract between defendants and any member of plaintiff's family; the length of time the bodies had been interred; the practicality of disinterment; the fact that defendants had permitted the remains of at least 19 individuals to be disinterred from Rose Hill; and the effect of the disinterments on others, including defendants. Our review of the record supports the trial court's conclusion that the equitable balance of the evidence favored plaintiff's being permitted to have her father and sister exhumed and reburied in the family plot.

### IV.

Alternatively, relying on *Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316 (1974), which sets forth the general proposition that courts will not interfere with the honest business judgment of the directors of a corporation, defendants contend that the trial court erred in its application of neutral principles by refusing to consider plaintiff bound by the decision of the United Hebrew Cemetery Association's board of directors. We disagree.

 The business judgment rule acts to protect from liability directors of a corporation acting in good faith. *See Rifkin v. Steele Platt*, 824 P.2d 32 (Colo.App.1991). *See also Horst v. Traudt*, 43 Colo. 445, 448, 96 P. 259, 260 (1908) ("The courts shall not, as a general rule, at the suit of a stockholder, or any number of stockholders, interfere with the internal affairs and management of a corporation.").

 Contrary to defendants' assertions, the business judgment rule is irrelevant here. This is not a shareholder derivative suit seeking compensation for losses to a corporation from alleged errors in judgment on the part of the board of directors. *See* W.

Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 1037 & 2104 (1994) (purpose of business judgment rule is to shield honest business decisions from dissatisfied shareholders).

Rather, as we have discussed, this is a dispute over disinterment, properly decided by civil courts as a matter of equity. Under equitable principles, the position of the entity operating the cemetery, although a factor to be considered, is not the sole or dispositive factor. *See Wolf I.*

In addition, neither plaintiff nor any other family member is a shareholder or member of, or associated in any manner with, the United Hebrew Cemetery Association. Thus, a decision by the directors of the Association, in and of itself, is not binding under any circumstances on the plaintiff.

### V.

 Finally, we decline to consider defendants' contention that the trial court's decision ordering them to permit the requested disinterments constitutes an unlawful abridgement of their freedom of religion under the free exercise clause or an improper intrusion into religious matters under the establishment clause of the First Amendment. Defendants did not raise this issue in the trial court. *See Messler v. Phillips*, 867 P.2d 128 (Colo.App.1993); *First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo.App.1990).

The order is affirmed.

MARQUEZ and TURSI,* JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1994 Cum.Supp.).