Grace FREUDENBERGER, Victor Freudenberger, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY and Does 1–10, inclusive, Defendants.

No. 96–0452–IEG (LSP).

United States District Court, S.D. California.

Sept. 19, 1996.

James A. Testa, John Michael Harmata, Testa and Grady, Vista, CA, for Grace and Victor Freudenberger.

Peter H. Klee, Charles A. Danaher, Luce Forward Hamilton & Scripps, San Diego, CA, for Allstate Insurance.

## ORDER GRANTING DEFENDANT ALLSTATE'S MOTION FOR SUMMARY JUDGMENT [DOC. # 5]

GONZALEZ, District Judge.

Defendant's motion for summary judgment came on regularly for hearing in Courtroom 13 of this Court, the Honorable Irma E. Gonzalez, District Judge, presiding. James A. Testa, Esq. of Testa & Associates appeared on behalf of plaintiffs Grace & Victor Freudenberger. Charles A. Danaher, Esq. of Luce Forward Hamilton & Scripps appeared on behalf of defendant Allstate Insurance Company.

### BACKGROUND

Judgment creditors Grace and Victor Freudenberger seek through a "direct action" pursuant to Insurance Code § 11580(b)(2) to recover compensatory damages for the alleged breach of an insurance contract that existed between Gordon and Barbara Parker, the parents of judgment debtor Gary Parker, and defendant Allstate Insurance Company ("Allstate"). The following uncontroverted facts gave rise to the instant motion.

On June 23, 1993, then nineteen-year-old Gary Parker was riding a skateboard while walking his dog along a sidewalk on Carlsbad Boulevard in Carlsbad, California. He collided with plaintiff Grace Freudenberger from behind as she walked down the sidewalk with her husband. As a result of the accident, she was hospitalized and incurred approximately $12,000 in medical expenses.

The Freudenbergers retained an attorney, who wrote a demand letter on August 30, 1993 to Gary Parker and his parents Gordon and Barbara Parker, "respectfully suggest[ing]" that they turn the letter over to their liability insurer, if any, or otherwise face "appropriate legal action." (Memo, Exh. 2). Indeed, on January 10, 1993, Gor-

don and Barbara Parker had entered into a homeowner's insurance contract with Allstate to insure their home at 2712 Tiburon Avenue, Carlsbad, California. The Parkers therefore forwarded the demand letter to Allstate on September 2, 1993.

The Parkers' homeowner's policy includes the following provisions:

1. **"You"** or **"your"**—means the person named on the declarations page as the insured and that person's resident spouse.

3. **"Insured Person"** means **you** and, if a resident of **your** household:

   a) any relative; and

   b) any dependent person in **your** care.

(Memo, Exh. 18 at 3). Gordon and Barbara Parker are the persons named on the declarations page of the policy. Gary Parker is not a named insured. At the time of the accident, Gary Parker:

(1) was an emancipated adult under California law; (*See* Cal.Fam.Code § 6501);

(2) had moved out of his parents' house at least six months earlier, and was living in an apartment he had rented in Encinitas, California;

(3) was self-supporting in that he paid his own rent, bought his own food, owned and insured his own car, and filed his own taxes;

(4) was using the garage of his parents house to store snowboarding and exercise equipment;

(5) was using his parents' address as his official mailing address [1] because he lived in San Diego during the summer months and in Big Bear, California each winter, and therefore constantly changed addresses; and

(6) occasionally spent the night, did his laundry, and fixed his car at his parents' home.

Therefore, on September 21, 1993, Allstate concluded that Gary Parker was not an "insured person" under his parents' home-

---

1. Indeed, Gary Parker listed his parents' Tiburon Avenue address with both the Department of Motor Vehicles and the Social Security Adminis-

tration, and reported it to the Carlsbad police officer who arrived at the scene of the accident with Ms. Freudenberger.

owner's policy, and denied coverage of the accident involving Ms. Freudenberger.

On May 20, 1994, plaintiffs sued Gary Parker in state court, alleging claims for negligence and loss of consortium. After a prove-up hearing on September 5, 1995, plaintiffs obtained a default judgment against him in the amount of $123,274.29, including $12,861 in special damages and $100,000 in general damages.

On January 1, 1996, plaintiffs' counsel sent Allstate a second demand letter threatening legal action if Allstate did not satisfy by March 1, 1996 the judgment plaintiffs had obtained against Gary Parker. Allstate did not alter its decision to deny coverage.

Thereafter, on February 28, 1996, plaintiffs filed a state court action against Allstate to enforce the $123,274.29 judgment pursuant to section 11580(b)(2) of the California Insurance Code, California's "direct action" statute.[2] Allstate timely removed the action based on diversity of citizenship.

## DISCUSSION

Allstate now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Allstate argues, and plaintiffs concede, that there is no genuine issue of material fact as to plaintiffs' claim. The parties disagree, however, on the purely legal question of whether Gary Parker was an "insured person" under the Parkers' homeowner's policy.

Specifically, Allstate argues that because Gary Parker did not belong to the same "household" as his parents, the named insureds, nor "resided" with them at the time of the accident, the Freudenberger's loss does not fall within the scope of the policy's coverage. Plaintiffs counter that Gary Parker had more than one residence, that one of those residences included the home Allstate insured, and that therefore Allstate is liable to pay the judgment entered against him.

2. Section 11580(b)(2) provides that "whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or

## A. Standard of Review

Summary judgment is proper where the moving party demonstrates "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Because no material facts are disputed in this case, the Court need only determine whether defendant is entitled to judgment on plaintiffs' claims as a matter of law. *Id.; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Throughout the review of a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). "Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987).

## B. Legal Standards Governing Contract Interpretation

California law governs the interpretation of insurance policies. *Allstate Insurance Co. v. Smith,* 929 F.2d 447, 449 (9th Cir.1991). Although insurance policies have their special features, their interpretation is like that of any other contract, primarily a judicial function. *Waller v. Truck Insurance Exchange, Inc.,* 11 Cal.4th 1, 22, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The primary goal of contractual interpretation, and therefore policy interpretation, is "to give effect to the mutual intention of the parties." Cal.Civ.Code § 1636. To the extent possible, the intent of the parties is to be inferred from the written provisions of the policy, and where the language of the policy is clear and unambiguous, it governs. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,* 9 Cal.4th 27, 37, 36 Cal.Rptr.2d 100, 884 P.2d 1048 (1994).

property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

■ A policy provision will be found ambiguous only where it is susceptible to two or more reasonable interpretations. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993). The Court construes the language of the policy in the context of the instrument as a whole and under the circumstances of the case; the language may not be found ambiguous in the abstract. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Nor will the Court find ambiguous or uncertain a policy term that already has been judicially interpreted. *Bartlome v. State Farm*, 208 Cal.App.3d 1235, 1239, 256 Cal.Rptr. 719 (1989).

■ If the Court concludes that the terms of the contract are ambiguous or uncertain, the Court will interpret the contract language based on "the *objectively* reasonable expectations of the insured." *Id.* at 1265, 256 Cal.Rptr. 719 (emphasis added). The Court will not consider the insured's subjective beliefs. If the Court is unable to determine whether coverage is consistent with the insured's objectively reasonable expectations, the Court will resolve the ambiguity against the insurer. *Id.*

## C. "Insured Person" Under the Policy

■ The Parkers' homeowner's policy clearly defines an "insured person" to include a "resident" of the Parkers' "household" who is a relative or dependent upon the Parkers' care. (Memo, Exh. 18). California courts have interpreted the provision "resident of [the named insured's] household" to impose two requirements; namely, that the person for whom coverage is sought must

(1) belong to the same household as the named insured; *and*

(2) permanently reside with the named insured.

*Jacobs v. Fire Ins. Exch.*, 227 Cal.App.3d 584, 590, 278 Cal.Rptr. 52 (1991). Applying each of these requirements to the uncontroverted facts of this case, the Court finds that Gary Parker was not an "insured person" under his parents' policy.

### 1. Same Household

In the insurance context, California courts have interpreted the term "household" to mean:

a collection of persons, whether related or not, who live together as a group or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interests.

*Id.* at 594, 278 Cal.Rptr. 52 (adopting the holding of *Island v. Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 547–48, 184 P.2d 153 (1947)).

While it is true that at one time Gary Parker was a member of his parents' "household," *at the time of the accident*, he already had moved out of their house and rented his own apartment in a different town. In fact, it is uncontroverted that once their son moved out, the Parkers converted his old bedroom to a guest room, an undertaking which certainly cannot be considered "a common goal consisting of their mutual interests." Thus, even viewing the facts in the light most favorable to plaintiffs (despite their failure to offer any evidence or argument in opposition to Allstate's position), the Court finds that Gary Parker did not belong to the same "household" as his parents at the time of the accident.

### 2. Permanent Resident

■ "Every person has, in law, a residence." Cal.Gov.Code § 243. The term "'residence' connotes any factual place of abode of some permanence, more than a temporary sojourn." *Utley v. Allstate Insurance Co.*, 19 Cal.App.4th 815, 820, 24 Cal. Rptr.2d 1 (1993) (internal quotations omitted). A relative may be a "resident" of an insured's household even though he or she does not live in the household on a daily basis. *Reserve Insurance Co. v. Apps*, 85 Cal.App.3d 228, 231–32, 149 Cal.Rptr. 223 (1978). However, a person "18 to 21 years old who lives apart from his [or her] parents will usually consider his [or her] house to be home [as opposed to the parents' house]." *Jolicoeur v. Mihaly*, 5 Cal.3d 565, 581, 96 Cal.Rptr. 697, 488 P.2d 1 (1971). Generally,

the term varies according to the circumstances and facts of the case. *Utley,* 19 Cal.App.4th at 821, 24 Cal.Rptr.2d 1. In cases involving insurance policies *extending* coverage to members of the insured's household (as opposed to excluding them from coverage), the term "resident" is broadly interpreted, and "courts will interpret the term so as to extend the coverage if this can be done under any reasonable interpretation of the facts." *National Auto. & Cas. Insurance Co. v. Underwood,* 9 Cal.App.4th 31, 40, 11 Cal.Rptr.2d 316 (1992).

Here, plaintiffs argue that Gary Parker's "residency" appears capable of at least two reasonable constructions. The first, and better interpretation according to plaintiffs, is that Gary Parker has several residences, and his permanent residence is his parents' home. In support of this construction, plaintiffs point to the fact that Gary Parker listed as his residence his parents' Tiburon Avenue address with the Department of Motor Vehicles, the Social Security Administration, and the Carlsbad Police Department. Plaintiffs also offer evidence that Gary Parker lived at his parents' house almost every summer except the summer of 1993.

On the other hand, plaintiffs seemingly concede that one reasonably could read "resident" in a more literal sense to mean where Gary Parker was physically residing at the time of the accident, which was in an apartment in Encinitas. Indeed, Gary Parker had moved his personal belongings to the Encinitas apartment such that, at the time of the accident, the Tiburon address was not for him a "factual place of abode of some permanence." Nonetheless, plaintiffs imply that because the term "resident" is susceptible to two constructions, the Court should construe the term most strongly in favor of coverage.

■ As discussed above, the Court may not adopt "strained or absurd interpretation[s] to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640

P.2d 764 (1982). On its face, the homeowner's policy specifically distinguishes between "resident" and "temporarily living," suggesting that the former is something more permanent than the latter. (Memo Exh. 18, at 1–4). Judicial interpretation of the term "resident" mirrors this distinction. *See Utley,* 19 Cal.App.4th at 820, 24 Cal. Rptr.2d 1; *Vanguard Ins. Co. v. Hartford Ins. Co.,* 9 Cal.App.3d 765, 768, 88 Cal.Rptr. 628 (1970). In addition, while considered relevant to construction, the fact that Gary Parker continues to use his parents' mailing address is not dispositive of the residency determination in this case,[3] particularly in light of his annual seasonal relocations and the paucity of competent evidence demonstrating anything other than minimal ties to his parent's house. Finally, even if the Court were to conclude that the term "resident" was ambiguous or uncertain, the Court would interpret the contract language based on "the *objectively* reasonable expectations of the insured." *Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. For example, here, parents like the Parkers, who maintain other liability insurance policies (i.e. automobile) which do not cover an adult son, likely would not expect their homeowner's insurance policy to cover him either.

Thus, construing the language of the homeowner's policy in the context of the instrument as a whole and under the circumstances of this case, the Court finds that Gary Parker did not reside with his parents at the time of the accident.

## CONCLUSION

For the foregoing reasons, the Court finds Gary Parker was not an "insured person" under his parents' homeowner's policy because, at the time of the accident involving plaintiffs, he did not belong to the same household, as nor reside with, his parents. Therefore, the Court further finds that Allstate did not breach the insurance contract

---

3. A number of courts have found that an adult son or daughter does not reside with his or her parents, despite occasionally visiting them or continuing to use their mailing address. *See e.g. St. Paul Fire & Marine Co. v. Lewis,* 935 F.2d 1428 (3rd Cir.1991) (applying Pennsylvania law); *Allstate Ins. Co. v. Patterson,* 231 Va. 358, 344 S.E.2d 890 (1986); *Connolly v. Galvin,* 120 N.H. 219, 412 A.2d 428 (1980).

when it refused to pay the default judgment entered against him.

Accordingly, the Court **GRANTS** Allstate's motion for summary judgment on plaintiffs' direct claim under California Insurance Code § 11580(b)(2). As this case is now terminated, the Court hereby **VACATES** all pretrial and trial dates.

**IT IS SO ORDERED.**