[No. B085929. Second Dist., Div. Five. Nov. 14, 1996.]

TONE LOUISE BLUEHAWK et al., Cross-complainants, Cross-defendants and Respondents, v.
CONTINENTAL INSURANCE COMPANY, Cross-defendant, Cross-complainant and Appellant.

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth, James H. Wilkins, Todd W. Baxter and Ted A. Smith for Cross-defendant, Cross-complainant and Appellant.

Sharon J. Waters for Cross-complainants, Cross-defendants and Respondents.

---

**OPINION**

**GODOY PEREZ, J.**—Appellant Continental Insurance Company (Continental) appeals a judgment declaring Continental owed a duty to defend and indemnify Hans Mustad for injuries he caused to respondents Robert J. Alvarez III, Wendy D. Alvarez, and Donovan J. Alvarez, through his guardian ad litem, Julie Ann Ibrahim (collectively the Alvarez heirs), and Tone Louise Bluehawk (Bluehawk). After review, we reverse the judgment as to Continental and affirm in all other respects.

### PROCEDURAL AND FACTUAL BACKGROUND

From 1988 to 1990, Hans Mustad (Hans), who was in his 20's, lived with his mother, Fay Mustad (Fay). In June 1990, he moved out of Fay's house at her insistence because she disapproved of his friends. Thereafter, Hans moved from place to place, staying with relatives and friends, including the Alvarez family. Although Fay did not let Hans move back in, she let him store some of his personal belongings with her and occasionally allowed him to spend a night or two at her home.

On September 17, 1990, Fay submitted an application to Continental for an automobile liability policy. Because Fay did not want to insure Hans, the application did not name him as an additional insured, nor did it identify him as a member of her household. After accepting the application, Continental issued its policy covering Fay and members of her household against claims arising from the use of an automobile. The policy defined a member of the household as a "resident of [Fay's] household who is: . . . related to [her] by blood . . . ."

On May 4, 1991, Hans was driving a car owned by Belinda Alvarez, when he was involved in an accident which killed her and injured Bluehawk, who were passengers in the car. The California Highway Patrol's accident report stated Hans was uninsured. After the accident, Hans was sued by Bluehawk and the Alvarez heirs for personal injury and wrongful death.

In August 1992, Interinsurance Exchange of the Automobile Club of Southern California (the Automobile Club) filed a complaint for declaratory relief against Hans, Bluehawk, and the Alvarez heirs. The Automobile Club had issued a liability policy to Michele Laing, who was Hans's sister and

with whom he had occasionally stayed after moving out of Fay's home. The Automobile Club was seeking a declaration that Hans was not insured under Laing's policy, which covered Laing's relatives who were "residents" of her household.

In July 1993, Bluehawk cross-complained against the Automobile Club and Continental. She sought a judicial declaration that Hans was a resident of either his mother's or his sister's household, obligating either Continental under Fay's policy, or the Automobile Club under Laing's policy, to indemnify him in her personal injury action.

In August 1993, the Alvarez heirs filed a first amended cross-complaint for declaratory relief against Hans, Fay, Continental, and the Automobile Club. Similar to Bluehawk, they sought a judicial declaration that either Continental or the Automobile Club was obligated to indemnify Hans in their wrongful death action.

In September 1993, Continental filed its own cross-complaint for declaratory relief against Hans, Fay, Bluehawk, and the Alvarez heirs. Continental sought a judicial declaration that Hans was not a "resident" of Fay's household as defined by its policy, and therefore was not covered by it.

Hans did not take a position in the litigation or file a response, and his default was taken by Continental and the Automobile Club. Fay was later dismissed by Continental. Thereafter, the parties entered into a stipulation which made the issue of Hans's residency dispositive. The stipulation provided that if the court determined that Hans was a resident of Laing's household on the date of the accident, the Automobile Club would indemnify him in the Bluehawk and Alvarez actions, but if he were a resident of Fay's household, Continental would indemnify him.

The matter was tried to the court in February 1994. At trial, Fay testified that she did not consider Hans a resident of her household after he moved out in June 1990 because she had told him she did not want him to live with her any more. She further explained that her Continental policy application had not identified Hans as a member of her household because she did not want to insure him. She testified: "Q Did you tell the [insurance] agent when procuring the Continental policy that you also wanted to identify Han[s]'s truck as an insured vehicle? [¶] A No, sir. [¶] . . . [¶] Q And did you tell the agent while you were procuring the Continental policy that you wanted to include Hans Mustad as an insured driver? [¶] A No. [¶] . . . [¶] Q Ms. Mustad, when you obtained the Continental policy, did you ever intend for it to provide coverage for Hans Mustad? [¶] A No. That was for my household." Hans confirmed Fay's testimony, stating that he was homeless from

June 1990 to March 1992, and that Fay never paid for any insurance for him after he moved out.

After hearing the evidence, the court filed a tentative statement of decision containing its factual findings. The court found that after Hans left Fay's home in June 1990, he lived the life of a "drifter—'crashing' for a few nights' sleep in the home of anyone who would let him come in." The court was therefore inclined to find that Hans had no residence at the time of the accident, explaining, "[i]t is abundantly clear from the evidence that after HANS MUSTAD left his mother's house in mid-1990, he did not acquire any new residence elsewhere." The court determined, however, that Government Code section 244, subdivision (c), which provides "[a] residence cannot be lost until another is gained," compelled a different result. Applying section 244 to the facts before it, the court announced: "Absent statutory direction, this Court would come to the conclusion that at the time of the accident in question, HANS MUSTAD had *no* residence whatsoever. But, Section 244 of the Government Code, which gives guidance as to the determination of a place of residence, mandates that 'there can be only one residence' (subdivision b); and that 'a residence cannot be lost until another is gained' (subdivision c)." (Italics in original.) Accordingly, the court found that Hans was a "resident" of Fay's household, notwithstanding the court's factual determination that in reality Hans had no residence at all. Emphasizing that the sole basis for its ruling was section 244, the court noted: "Again, this Court wants to make it clear that were it not for Government Code Section 244(c) ('a residence cannot be lost until another is gained'), it would hold that the Defendant MUSTAD has no residence at all. However, faced with that legislative imperative, this decision finds as a fact that Defendant MUSTAD's residence at the time of the accident was that of his mother, FAY MUSTAD . . . ."

The court thereafter incorporated its statement of decision in its ruling and final judgment, which was entered on June 15, 1994. The court declared that the Automobile Club owed no duty to defend or indemnify Hans, and entered judgment for the Automobile Club against Bluehawk and the Alvarez heirs. The court also declared that Hans was owed such duties by Continental, and entered judgment for Bluehawk and the Alvarez heirs against Continental. This appeal followed.[1]

## STANDARD OF REVIEW

We uphold the trial court's findings of fact if they are supported by substantial evidence. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875,

---

[1]Bluehawk and the Alvarez heirs filed notices of appeal as to the judgment in favor of the Automobile Club, but abandoned their appeals.

881 [92 Cal.Rptr. 162, 479 P.2d 362]; *In re Marriage of McManamy & Templeton* (1993) 14 Cal.App.4th 607, 610 [18 Cal.Rptr.2d 216].) The proper construction of an insurance policy is a question of law, however, which we independently review. (*Collin* v. *American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 802 [26 Cal.Rptr.2d 391]; *Smyth* v. *USAA Property & Casualty Ins. Co.* (1992) 5 Cal.App.4th 1470, 1474 [7 Cal.Rptr.2d 694]; *Cal-Farms Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571 [218 Cal.Rptr. 407].)

## DISCUSSION

In interpreting the meaning of the term "resident" in Fay's insurance policy, the trial court relied on Government Code section 244 (hereafter section 244), which is contained in the division of the Government Code dealing with the political rights of the people of California entitled "Sovereignty and People of the State." Section 244 provides that a person's "residence cannot be lost until another is gained." (§ 244, subd. (c).) That section, however, was not mentioned in the insurance policy. By grafting section 244 onto the policy's meaning of "resident," the court found that Hans was insured even though he was no longer living with Fay. Continental contends this was error. We agree.

Although they have special features, insurance policies are fundamentally contracts. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) They are therefore interpreted using the ordinary rules of contractual interpretation. (*Id.* at p. 1264 ["While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."].) The paramount rule in interpreting a contract is that the parties' mutual intent be given effect; this rule applies with equal force to insurance policies. As our Supreme Court has explained, "The fundamental goal [in interpreting an insurance policy] is to give effect to the mutual intention of the parties." (*Ibid.*; see also *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253] ["Under statutory rules of contract interpretation, the mutual intention of the parties at the time the [policy] is formed governs interpretation."]; Civ. Code, § 1636 ["A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."].)

Here, the evidence is undisputed that the parties to the Continental policy—Fay and Continental—did not intend for Hans to be insured. Hans had already moved out when Fay applied for the Continental policy, and Fay did not identify him as a resident of her household in her application or tell

Continental that she wanted to insure him. Moreover, Hans always understood he was not covered by the policy, telling the highway patrol officer at the scene of the accident that he had no insurance coverage. Notwithstanding the uncontradicted evidence of Continental and Fay's mutual intent, the trial court found that Hans was covered by Fay's policy as a "resident" of her household by operation of section 244.

This was error because there was no justification for the court to resort to extrinsic interpretative aids, such as section 244, to interpret the policy's definition of "resident." Such aids may be looked to only when the policy language is ambiguous. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at pp. 1264-1265 [interpretative aids and rules employed only when insurance policy is ambiguous]; *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822 [same]; *Smyth* v. *USAA Property & Casualty Ins. Co., supra,* 5 Cal.App.4th 1470, 1474 [principles of construction " 'come[] into play only if it is first determined that an ambiguity exists, which is also a question of law' "].) Here, however, there was no ambiguity: Both parties to the policy agreed Hans was not covered.

In any event, even if the policy were ambiguous, it was error to use section 244 in interpreting it. By its own terms, section 244 concerns political rights, and therefore its definition of "residence" has no relationship to the contractual meaning of "resident" or "member" of a household in an automobile liability policy. (See, e.g., *Walters* v. *Weed* (1988) 45 Cal.3d 1, 6-7 [246 Cal.Rptr. 5, 752 P.2d 443] [section 244 relates to the right to vote].) We therefore decline to follow decisions which have applied section 244 when interpreting the term "resident" in insurance policies, such as *Safeco Ins. Co.* v. *Gibson* (1989) 211 Cal.App.3d 176, 178-179, 184 [259 Cal.Rptr. 206], *Northwestern National Casualty Co.* v. *Davis* (1979) 90 Cal.App.3d 782, 784 [153 Cal.Rptr. 556], and *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898, 900 [88 Cal.Rptr. 593].

Respondents' contention that Hans was factually a resident of Fay's household even without operation of section 244 is unpersuasive because the trial court found to the contrary, a finding which is supported by substantial evidence consisting of both Fay and Hans's testimony that he moved out in June 1990. Accordingly, we disregard conflicting evidence cited by respondents tending to show that Hans still lived with Fay, such as the fact that he continued to use her address on his driver's license and to receive mail, and had a set of keys to her house. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479] [reviewing court does not reweigh conflicts in the evidence]; *Kuhn* v. *Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633 [29 Cal.Rptr.2d 191] [same].)

Finally, respondents' contention that public policy requires that Continental's policy be interpreted so as to provide them compensation is unavailing in that they cite no authority that this public policy prevails over the unambiguous intent of Fay and Continental that Hans not be covered. (See *Allstate Ins. Co.* v. *Smith, supra*, 9 Cal.App.3d at p. 902 [public policy behind automobile insurance requirement is " 'to provide compensation for those injured through no fault of their own' "].)

We thus hold that the trial court erred by relying on section 244 to interpret the Continental policy to find that it covered Hans. Because the court clearly stated that the only basis for extending coverage was its determination that section 244 applied here, the trial court's judgment cannot stand.

## DISPOSITION

The judgment finding Continental Insurance Company owed a duty to defend and indemnify Hans Mustad is reversed, and the trial court is directed to enter a new and different judgment finding that Continental Insurance Company had no such duties. The judgment is affirmed in all other respects. Each side to bear its own costs on appeal.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied December 12, 1996, and respondents' petition for review by the Supreme Court was denied February 5, 1997. Mosk, J., was of the opinion that the petition should be granted.