Glen R. ACKERMAN, Plaintiff–Appellee,

v.

Natly O. FOSTER, Defendant,

and concerning Mid–Century Insurance Company, Garnishee–Appellant.

No. 97CA0289.

Colorado Court of Appeals, Div. III.

May 14, 1998.

As Modified on Denial of Rehearing July 2, 1998.

Certiorari Denied April 12, 1999.

Sarney & Pierson, P.C., Saul R. Sarney, Anne Pierson, Denver, Colorado, for Plaintiff–Appellee.

Levy & Lambdin, P.C., Suzanne Lambdin, Martha C. Ferris, Englewood, Colorado, for Garnishee–Appellant.

Opinion by Judge BRIGGS.

Plaintiff, Glen R. Ackerman, obtained a judgment against defendant, Natly O. Foster, for personal injuries sustained in a traffic accident and then served a writ of garnishment on Mid–Century Insurance Co. (Mid–Century). After an answer and traverse had

been filed and a hearing held, the court determined that defendant was included within the coverage of an automobile insurance policy Mid–Century had issued to her father. Mid–Century appeals the district court's order in favor of defendant for the use of plaintiff. We reverse.

The policy Mid–Century had issued to defendant's father provided coverage for a "family member" who was "a resident of your household." At the hearing on the garnishment, it was undisputed that defendant had been driving a borrowed vehicle, which was uninsured, and that she was a "family member." Thus, the sole issue to be resolved was whether, at the time of the accident, defendant was a "resident" of her father's "household."

The facts underlying the resolution of that issue were also undisputed. Defendant was 19 years old in November 1990, when the accident occurred in Aurora, Colorado. She had enlisted in the Army Reserve in August 1989 while living with her parents in California. In February 1990, she had left home to begin active-duty training in Colorado. She kept personal items at her father's house in California, paid taxes in California, and had a California driver's license. However, her father had not included her as an insured on the policy, which he purchased two months after she had left home for Colorado; she had been on active duty away from her father's house for almost a year before the accident; and she had more than a year remaining of active-duty training.

The plaintiff and Mid–Century independently came to the conclusion that the policy should be construed under California law. Applying that law, the district court found that "resident of your household" was ambiguous and that the ambiguity could not be resolved by reference to the facts existing at the time the policy was executed or at the time of the accident. The court therefore construed the policy against Mid–Century and thus interpreted the policy term, "resident of your household," to include defendant.

Mid–Century contends the trial court erred in construing the policy against it and, as a result, in concluding that defendant was a resident of her father's household at the time of the accident. The trial court's conclusion was consistent with one of the divergent approaches reflected in California decisions. We nevertheless reach a contrary conclusion using a different approach.

I.

■ Although citing different law, the parties on appeal again both assert that the insurance policy should be construed pursuant to California law. Nevertheless, at least absent a contractual stipulation, we have an independent responsibility to determine the applicable law. See *Matter of Butler, Inc.*, 2 F.3d 154, 155 (5th Cir.1993)("Both parties incorrectly assume that Butler's motion is governed by Fed.R.Civ.P. 59."); *Lobeck v. City of Riviera Beach*, 976 F.Supp. 1460, 1464 (S.D.Fla.1997)("As an initial matter, the parties appear incorrectly to assume that Florida law controls the settlement question."); *see also Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297 (Colo.1985); *Gold Rush Investments, Inc. v. Johnson Construction Co.*, 807 P.2d 1169 (Colo.App.1990).

The supreme court in *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979), adopted the general approach of the Restatement (Second) Conflict of Laws for contract actions. It then applied the approach set forth in the specific section of the Restatement applicable to the type of contract before it.

■ Restatement (Second) Conflict of Laws § 193 (1971) addresses the question of the law to apply in determining the validity of and rights created by a casualty insurance contract, which includes automobile liability insurance policies. These contracts are generally to be determined by the local law of the state that the parties understood was to be the principal location of the insured risk during the term of the policy. See *Keefner v. United States Fire Insurance Co.*, 1991 WL 2233 (D.Colo.1991)(unpublished)(applying Colorado law and adopting approach of Restatement (Second) Conflict of Laws § 193 (1971)); *cf. Budd v. American Excess Insurance Co.*, 928 F.2d 344 (10th Cir.1991).

■ Here, defendant's father and the other named insureds all resided in California. Although defendant had moved to Colorado, her father had not included her on the policy or mentioned her when the policy was discussed and issued. Hence, we agree California law should apply.

■ The parties have further concluded that questions of the interpretation and application of a contract are questions of law. Though the issue is not always easy to resolve, *see generally* 3 A. Corbin, *Contracts* § 542 (1960), the circumstances of this case involve essentially undisputed facts. We therefore agree that, under California law, we must make an independent review of the policy, construe it, and resolve the ultimate issue of coverage as matters of law. *See Utley v. Allstate Insurance Co.,* 19 Cal. App.4th 815, 24 Cal.Rptr.2d 1 (1993)(on appeal, a court makes a de novo review of the policy to determine coverage); *see also National Auto. & Casualty Insurance Co. v. Underwood,* 9 Cal.App.4th 31, 11 Cal.Rptr.2d 316 (1992); *but see Bluehawk v. Continental Insurance Co.,* 50 Cal.App.4th 1126, 58 Cal. Rptr.2d 147 (1996)(upholding the trial court's "finding" as to extent of coverage because it was supported by substantial evidence).

■ Under California law, while insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. Among those rules is that a contract term is ambiguous if its meaning is susceptible of more than one reasonable construction. *See National Auto. & Casualty Insurance Co. v. Underwood, supra.*

While the rule is clear, determining whether the standard policy terms "resident" and "household" are ambiguous has seemed an elusive task. Some courts, using one analytical approach, have treated these terms as unambiguous. *See Utley v. Allstate Insurance Co., supra; Safeco Insurance Co. v. Gibson,* 211 Cal.App.3d 176, 259 Cal.Rptr. 206 (1989). Others, using an alternative approach, have treated the terms as ambiguous, requiring that they be construed against the insurer. *See National Auto. & Casualty Insurance Co. v. Underwood, supra; Cal-Farm Insurance Co. v. Boisseranc,* 151 Cal. App.2d 775, 312 P.2d 401 (1957).

Our task is to determine the proper approach for addressing the question of ambiguity; to construe the terms "resident" and "household" using that approach; and, finally, to apply the policy's coverage clause, with the terms so defined, to the undisputed facts.

## II.

The divergent approaches in California to resolving a question of ambiguity reflect a similar divergence in other states, including Colorado. The difference in the approaches is subtle but critical.

The first approach recognizes that a term's meaning does not vary according to the facts surrounding a particular accident. No matter how great the difficulty in application, it is a matter of applying a fixed meaning to varying facts. *See Jacobs v. Fire Insurance Exchange,* 227 Cal.App.3d 584, 278 Cal.Rptr. 52 (1991).

The alternative approach treats a term as ambiguous based on the belief that its meaning "varies according to the circumstances and facts of the case." The "circumstances and facts" referred to are those surrounding the accident and injuries in question. *See Utley v. Allstate Insurance Co., supra; Cal-Farm Insurance Co. v. Boisseranc, supra.*

In our view, only the first approach reflects a proper understanding of the concept of ambiguity. To explain our conclusion, it is necessary first to summarize what we view as the correct analytical steps toward determining whether an insurance policy provides coverage for a particular accident, including the resolution of any question of ambiguity. The difference in the two approaches can then be considered within that analytical framework.

## A.

■ At its core, what we view as the proper approach to resolving a question of ambiguity, under California or Colorado law, treats the construction and application of a policy term as two, distinct analytical stages. Each can be briefly summarized.

### 1.

■ The first stage, construing the term, can consist of several steps. Initially, a court must determine if the parties attached any particular meaning to the term, or one of the parties attached such a meaning, of which the other party had reason to know. If so, that meaning will prevail even over the term's plain and ordinary meaning. *See La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 36 Cal. Rptr.2d 100, 884 P.2d 1048 (1994); *see generally* 3 A. Corbin, *supra*, §§ 542 & 554.

■ A question concerning the meaning of a term in an insurance policy is seldom resolved in this step. Most policies contain standardized terms written by employees of the insurer who never meet the insured. Further, the agent selling the policy seldom discusses particular terms or their meanings with an insured at the time of purchase. Hence, a court must proceed with its construction of the policy term by looking to the general context in which the agreement was made. *See generally* 13 J. Appleman & J. Appleman, *Insurance Law & Practice* § 7385.

What the court is now seeking is the "objective" manifestation of intent, sometimes referred to as what objectively reasonable people would have intended. *See generally* 3 A. Corbin, *supra*, § 542, at 98–99 (1998 Supp.). With an insurance contract, typically the "general context" involves simply the consideration of the purposes for the policy. *See Freudenberger v. Allstate Insurance Co.*, 941 F.Supp. 940 (S.D.Cal.1996); *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., supra; see generally* 3 A. Corbin, *supra*; 13 Appleman & Appleman, *supra*, § 7385.

■ If this "objective" evidence indicates a term can be reasonably construed in only one way, no further construction is necessary. Without any specified definition, the court must presume the parties intended to give the term its plain and ordinary meaning, as would be understood by a person of reasonable intelligence purchasing such a policy. *See Jacobs v. Fire Insurance Exchange, supra; see generally* 13 Appleman & Appleman, *supra*, § 7384; 3 A. Corbin, *supra;* 2 L. Russ & T. Segella, *Couch on Insurance 3d* § 21:14 (1995).

■ If the term appears susceptible of more than one meaning, the court must construe the policy by selecting the meaning least favorable to the insurer. The purpose is to provide the coverage reasonably to be expected by an insured under a policy drafted by the insurer. Hence, a term in a coverage clause is construed with the meaning that results in the broader scope of the coverage clause, while a term in an exclusionary clause is construed with the meaning that results in the narrower scope of the exclusionary clause. *See National Auto. & Casualty Insurance Co. v. Underwood, supra; see generally* 1 S. Williston & W. Jaeger, *Contracts* § 609 (3d ed.1957); 13 Appleman & Appleman, *supra*, § 7401.

■ Precedent plays a role in this stage of the process it would not play if the court's task was to determine the expressed intent of the parties to a contract. Thus, to the extent courts in earlier published decisions have defined the terms in question, those decisions should not be ignored. *See Freudenberger v. Allstate Insurance Co., supra*, 941 F.Supp. at 943 ("Nor will the Court find ambiguous or uncertain a policy term that already has been judicially interpreted."); *Jacobs v. Fire Insurance Exchange, supra*, 227 Cal.App.3d 584, 278 Cal.Rptr. 52, at 57 ("We cannot ignore a clear statement defining the term 'household' issued by our highest court."); *see generally* 13 Appleman & Appleman, *supra*, § 7404 at 334 ("In construing an insurance contract, the words expressing the intention of the parties should be given a meaning settled by judicial decisions.").

Having resolved any ambiguity and ascertained a particular meaning, a court can typically state that meaning in no more than a few sentences. Applying the meaning is a different matter.

### 2.

The next stage in the process is to apply the meaning of the term that has been established to the facts surrounding the accident

and injuries in question. Even though the meaning may be easily understood, its application may still be difficult.

Language is inherently imprecise. It is virtually impossible to use a term in a contract, even one with an easily understood meaning, that can be applied in every possible circumstance with certainty. *See generally* 3 A. Corbin, *supra.* In this sense, although sometimes referred to as "ambiguous," imprecise terms are more properly described as "vague." *See generally* C. Goetz & R. Scott, *The Limits of Expanded Choice: An Analysis of the Interactions Between Express and Implied Contract Terms,* 73 Cal. L.Rev. 261 (1985)(fn.15).

The more vague the terms used in a contract, the greater the likelihood of future disputes. These disputes will have to be resolved by later negotiations or, if that fails, by a third party, typically a court. In this role, the court is expected to "fill in the blanks" by providing an "equitable" resolution of the dispute. *See generally* Goetz & Scott, *supra.*

■ In performing this function, a court must consider the objective reasonableness of the alternatives being urged by the parties. While not "construing" the policy "against" the insurer at this stage, a court must nevertheless reach a result that is consistent with the expectations of an ordinary person of reasonable intelligence. *See Freudenberger v. Allstate Insurance Co., supra; Jacobs v. Fire Insurance Exchange, supra.*

In this stage of the analysis a court considers "extrinsic" evidence, which now includes the facts surrounding the accident and injuries in question. However, at this point it is not considering extrinsic evidence in order to discover the expressed intent of the parties in regard to the term's meaning. The court has already determined no expressed mutual intent exists in the circumstances presented. Instead, it looks to extrinsic evidence in order to find and apply all facts relevant to the determination of the most reasonable and equitable resolution of the dispute. In doing so, the court is doing no more than performing its traditional role of applying law to established facts. *See generally,* 3 A. Corbin, *supra,* § 554; *see also Safeco Insurance Co. v. Gibson, supra.*

■ Precedent again plays a role at this stage of the process it does not play when the court is determining the expressed intent of the parties. Hence, to the extent other courts have applied the terms in question in similar circumstances, those decisions again cannot be ignored. *See Freudenberger v. Allstate Insurance Co., supra; see generally* 13 Appleman & Appleman, *supra,* § 7404.

### B.

■ As earlier noted, the first approach recognizes that the meaning of a policy term does not vary according to the facts of the accident in question. This reflects an understanding that a policy term is ambiguous if it is susceptible of more than one reasonable *meaning.* Once any ambiguity has been resolved and the meaning of a term ascertained, an "ambiguity" does not reappear merely because, when that meaning is *applied* in the circumstances surrounding the accident and injuries in question, coverage is "unclear." *See generally* 3 A. Corbin, *supra,* § 554; 13 Appleman & Appleman, *supra,* § 7386 at 164 ("Nor when a phrase used is not ambiguous, does difficulty in the application of the phrase to a particular situation create an ambiguity in the language of policy, even if the policy is ineptly drawn."); 13 Appleman & Appleman, *supra,* § 7836 at 35 (1997 Supp.)("The . . . extent of coverage does not determine ambiguity."); *see also Safeco Insurance Co. v. Gibson, supra,* 211 Cal.App.3d at 181, 259 Cal.Rptr. at 209 ("[T]he common thread that runs through [these cases] is not whether the terms 'resident' or 'member of the household' are themselves inherently ambiguous, but whether, under the particular facts of each of those cases, insurance coverage was extended or excluded under the terms of the policy in question."). This approach fits within the described analytical framework.

In contrast, under the alternative approach, terms like "resident" and "household" are believed to vary in meaning according to the circumstances and facts surrounding each accident. *See Freudenberger v. Allstate Insurance Co., supra;*

*Utley v. Allstate Insurance Co., supra.* Beginning with this belief, some courts have then "construed" the always "ambiguous" terms against the insurer when *applying* them. The result has been to extend insurance coverage to accidents and injuries not "unambiguously" excluded. *See State Farm Mutual Automobile Insurance Co. v. Elkins,* 52 Cal.App.3d 534, 125 Cal.Rptr. 139 (1975) *supra; Cal–Farm Insurance Co. v. Boisseranc, supra,* 312 P.2d at 404 ("[A]ny ambiguities in the policy must be interpreted against the insurer. This rule of construction extends to a determination of the question as to who is covered by a policy."). It was the use of this approach that led the trial court in this case to "construe" the policy against Mid–Century and conclude that defendant was within the scope of the policy's coverage at the time of the accident.

Despite its common use, in our view this approach reflects an inappropriate merging of the separate analytical stages of construing and applying a contract. Simply put, the intermediate question whether a policy term is susceptible to more than one *meaning* is unrelated to the ultimate question whether the policy, its terms having been defined, does or does not *apply* in the circumstances surrounding a particular accident.

Put another way, the application of a policy containing a defined term to a particular set of facts does not "vary" the meaning of the term. To "define" a word or phrase means not only to formulate an explanation, but also "to mark the limits of" and "to determine with precision or exhibit clearly the boundaries of." *Webster's Third New International Dictionary* 592 (1986). With each application in a new case, the term's meaning is not varied. It is made more precise.

The genesis of this confusion appears to be a statement set forth in at least two commonly-cited treatises: "[T]he fact that the terms of a policy may be construed as ambiguous when applied to one set of facts does not make them ambiguous as to others which come directly within the purview of such terms." 13 Appleman & Appleman, *supra,* § 7386 at 164; 2 Russ & Segella, *supra,* § 21:14 at 21–26.

The statement in both treatises is derived from a single case, *Smith v. Mutual Benefit Health & Accident Ass'n,* 175 Kan. 68, 258 P.2d 993, 995 (1953). In that case, the court concluded that a term in an exclusionary clause was not ambiguous. It further determined that the clause "clearly" excluded coverage for the accident and injuries in question.

The quoted statement in *Smith* was unnecessary to the opinion. Its apparent intent was to convey a simple, appropriate idea: coverage may so clearly include or exclude a particular accident that it is unnecessary to determine whether the policy term in question is ambiguous or to choose between possible meanings. The same result obtains under any reasonable meaning.

The problem is with the vehicle chosen to convey that idea. It is inaccurate to say a policy term is ambiguous when applied to one set of facts but not when applied to another. Rather, it may be necessary to *resolve* the question of ambiguity in one set of facts but not in another. If unnecessary, the policy may "clearly" apply or not apply. It does *not* "unambiguously" apply or not apply.

In sum, in California, Colorado, and elsewhere, a court must first determine whether the standard, but undefined, policy term in question is ambiguous. If so, the court must choose from among reasonable constructions the most appropriate meaning by construing the term against the insurer. The only exception is when the question of coverage can be answered without defining the term. However, without exception, the analytical step of construing the term is separate and distinct from the step of applying the policy with the term so defined.

It is this analytical framework that we use here to determine, under California law, whether Mid–Century's policy included defendant as an insured at the time plaintiff was injured in the accident with defendant.

### III.

We initially note that nothing in the circumstances surrounding the issuance of the policy indicates the parties attached any spe-

cial meaning to the phrase, "resident of your household," or the terms "resident" and "household." The parties never discussed the phrase or the terms. The policy did not define them. As is typical, this was simply part of a standard provision in a standardized insurance policy.

Defendant's father did testify at the hearing that he expected his daughter to return to his house. However, this information was not communicated to the insurance agent at the time of contracting. The daughter was likewise not listed on the policy as an insured.

In short, no evidence was introduced at the garnishment hearing indicating an objective manifestation by either party from which an actual intent to attach a special meaning to the phrase "resident of your household" could reasonably be inferred. Hence, the trial court was not called upon to make a factual finding that "interpreted" the contract consistent with any expressed understanding of the parties. *See generally* 3 A. Corbin, *supra*, § 554; *see also* 1 Williston & Jaeger, *supra* § 7401.

We must therefore construe the terms "resident" and "household" in their general context. Once defined, the terms must then be applied in the circumstances surrounding the accident involving plaintiff and defendant.

### A.

California courts have previously addressed the question whether, in the general context of a liability insurance policy, the terms "resident" and "household" are ambiguous. Those courts utilizing what we consider a proper analytical approach have consistently determined that the terms are each reasonably susceptible of only one meaning. *See Freudenberger v. Allstate Insurance Co., supra; Jacobs v. Fire Insurance Exchange, supra.*

▪ The federal district court in *Freudenberger v. Allstate Insurance Co., supra,* surveyed California law. It concluded that the state's courts had consistently interpreted the provision "resident of [the named insured's] household" to require that the person for whom coverage is sought must belong to the same household as the named insured and must permanently reside with the named insured.

As to the requirement of a permanent residence, the court further concluded:

> The term ' "residence" connotes any factual place of abode of some permanence, more than a temporary sojourn.' ... A relative may be a 'resident' of an insured's household even though he or she does not live in the household on a daily basis.... However, a person '18 to 21 years old who lives apart from his [or her] parents will usually consider his [or her] house to be home [as opposed to the parents' house].'

*Freudenberger v. Allstate Insurance Co., supra,* 941 F.Supp. at 943.

We do not necessarily agree that the issue turns on which housing the relative living apart subjectively considered to be home. Nevertheless, the actual definition of "residence" provided by the federal district court is consistent with that provided by the California Supreme Court in its earlier decision in *Smith v. Smith,* 45 Cal.2d 235, 288 P.2d 497 (1955). Although *Smith* was decided in a different context, the *Freudenberger* decision properly reflects that California courts in more recent decisions have adopted the *Smith* definition for use in the general context of liability insurance contracts. *See Utley v. Allstate Insurance Co., supra.*

We are therefore persuaded that, under California law, the term "resident" is not ambiguous as used in Mid-Century's policy. *See Freudenberger v. Allstate Insurance Co., supra; Jacobs v. Fire Insurance Exchange, supra; see generally* 13 Appleman & Appleman, *supra,* § 7404 at 339 ("[I]f the terms of the policy have a clear meaning by judicial decision, it can scarcely be said they are ambiguous...."). In light of these earlier decisions, we are further persuaded the *Smith* definition of "resident" should be used in the circumstances presented here.

▪ The term "household," as used in an automobile insurance policy, has likewise been construed as unambiguous. The California Supreme Court has defined the term to embrace two concepts. First, a household is made up of family members and others

who live together under one head. Second, a household includes those who live together in the same house or curtilage. *See Island v. Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 184 P.2d 153 (1947); *Jacobs v. Fire Insurance Exchange, supra; see also Freudenberger v. Allstate Insurance Co., supra.* Applying California law, we likewise find the term "household" unambiguous and the definition given it in these earlier cases appropriate here.

### B.

In applying these terms, now defined, to the facts surrounding the accident and injuries in question, we again do not write on a clean slate. The California courts have been equally consistent in their conclusion when applying the terms "resident" and "household" in similar factual settings.

In brief, an adult or emancipated child living away from home more than temporarily has not been considered a "resident" of the parent's "household." It has not mattered that the child had not formally adopted a new residence at the time of the accident, or that the child maintained some ties to the parent's home, such as storing personal belongings. *See Freudenberger v. Allstate Insurance Co., supra; Bluehawk v. Continental Insurance Co., supra; see also Jacobs v. Fire Insurance Exchange, supra.* More specifically, on two occasions the California courts have expressly held that members of the military residing elsewhere for more than a temporary sojourn are not "residents" of their parents' "households" for purposes of an automobile liability insurance policy. *See Island v. Fireman's Fund Indemnity Co., supra; Shapiro v. Republic Indemnity Co.*, 52 Cal.2d 437, 341 P.2d 289 (1959); *but see American Universal Insurance Co. v. Thompson*, 62 Wash.2d 595, 384 P.2d 367 (1963)(applying California law).

▆ In this case, defendant did store personal belongings at her father's home and may have used his address for tax purposes. However, it is undisputed her father did not list her on the policy as an insured; she was on active duty in the military and living away from her father's residence at the time of the accident; she had not lived with her father for almost a year; and she would not live there again for at least another year, if at all.

In these circumstances and applying California law, we conclude defendant was not a resident of her father's household at the time of the accident in which plaintiff was injured. Hence, defendant was not within the scope of the Mid–Century policy issued to her father.

Because of our resolution of this issue, we need not address Mid–Century's remaining contentions.

The judgment against Mid–Century and in favor of defendant for the benefit of plaintiff is reversed.

Judge PLANK, concurs.

Judge CASEBOLT, specially concurs.

Judge CASEBOLT, specially concurring.

I concur in the result reached by the majority. In my view, however, the majority reaches issues not presented to the trial court and which we need not treat.

Generally, in the absence of a strong contrary public policy, the parties may choose which forum's law will govern an action. *See Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). However, they may not stipulate as to the content of that law. *See Twohy v. First National Bank*, 758 F.2d 1185 (7th Cir.1985) (distinguishing between stipulation as to choice of law and as to meaning and scope of the law, and upholding stipulation as to the body of law to apply).

Here, I read the record to contain a stipulation by the parties that California law should apply to interpret the insurance policy. The parties did not impermissibly attempt to stipulate as to what the substantive law of California provided. Moreover, I perceive no strong contrary public policy issue here, and there is a reasonable basis for the parties' choice. *See Hansen v. GAB Business Services, Inc.*, 876 P.2d 112 (Colo.App. 1994). Hence, we need not determine choice of law issues.

Further, neither party has raised on appeal any issue concerning which law should apply. *See Wood Bros. Homes, Inc. v. Walk-*

*er Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369 (1979) (when a conflict of laws question *is raised,* the Restatement (Second) test concerning most significant relationship is employed). Accordingly, we should not decide that issue. *See Dorador v. Cronin,* 199 Colo. 85, 605 P.2d 53 (1980) (an appellate court will not pass upon issues which have not been presented for determination in the trial court except in the case of plain or fundamental error); *Wolf v. Rose Hill Cemetery Ass'n,* 914 P.2d 468 (Colo.App.1995).

For these reasons, I specially concur.