**Roger BRANSCUM and Kimberly Branscum, Plaintiffs–Appellants,**

v.

**AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY, a Michigan corporation, Defendant–Appellee.**

**No. 98CA1105.**

Colorado Court of Appeals,
Div. I.

July 8, 1999.

The Law Office of Darin Locke, Darin Locke, Superior, Colorado, for Plaintiffs–Appellants.

Mulliken, Gleason, Weiner & Whitney, P.C., Edward A. Gleason, Gregory M. O'Boyle, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this action seeking medical insurance coverage, plaintiffs, Roger and Kimberly Branscum, appeal from the trial court's dismissal of their complaint against defendant, American Community Mutual Insurance Company. We affirm.

In August 1994, plaintiffs purchased a health insurance policy from defendant. As a condition of issuing the policy, defendant attached an exclusion rider, signed by plaintiffs, excluding coverage for "any disease or disorder of the genital organs." The reason for the rider was Kimberly Branscum's diagnosis of and treatment for dysplasia, a precancerous condition of the cervix, in 1990. According to their complaint, plaintiffs were told by defendant's representative that the rider was temporary and would be reconsidered and removed after one year if Kimberly were symptom and treatment free for that period.

In September 1995, Kimberly underwent surgery for a hysterectomy upon the advice of her doctors. Thereafter, plaintiffs submitted the doctor and hospital bills for the operation to defendant for reimbursement, but defendant refused coverage based on the exclusion rider which it claimed was still in effect.

Plaintiffs filed suit alleging breach of contract, bad faith breach of an insurance contract, and negligent misrepresentation, seeking compensatory and punitive damages based on defendant's refusal to pay. Defendant answered the complaint and filed a motion for judgment on the pleadings. The trial court, implicitly finding that the exclusion rider was in effect at the time of the surgery, granted defendant's motion, determining that the unambiguous terms of the rider included the organs removed by the hysterectomy.

## I.

■ We first note that, if, as here, in a motion to dismiss and, similarly, a motion for judgment on the pleadings, the court is presented with and does not exclude material outside the complaint in making its ruling, then the motion is treated as one for summary judgment. *Lyon v. Amoco Production Co.*, 923 P.2d 350 (Colo.App.1996); *see Humphrey v. O'Connor*, 940 P.2d 1015 (Colo.App. 1996) (standard of review for a motion for judgment on the pleadings is consistent with that for a motion to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim).

■ Here, defendant submitted, and the trial court considered, the exhibits attached to its motion for judgment on the pleadings, that is, a medical dictionary definition of genitals, a diagram entitled "female genital organs," and the exclusion rider. Because the court accepted and referred to these exhibits in making its ruling, defendant's motion to dismiss is properly viewed as one for summary judgment.

Summary judgment is appropriate if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The burden of showing that no such issue exists is on the moving party and all doubts are to be resolved in favor of the nonmoving party. *Vargas v. State Farm Mutual Automobile Insurance Co.*, 916 P.2d 652 (Colo.App.1996).

## II.

■ The exclusion rider at issue states, as pertinent here:

It is understood and agreed that no claim for benefits shall be payable for any loss arising from, contributed to, or caused by:

— any disease or disorder of the genital organs, including any treatment or operation for or complications thereof.

Plaintiffs contend that the policy term, "genital organs," is unambiguous and includes only external "genitalia." Thus, they conclude, the exclusion rider does not apply to their claim. In the alternative, they argue that the standard dictionary meaning of "genital organs" conflicts with the definition set forth in medical dictionaries. Therefore, they argue, because more than one reasonable interpretation of the term exists, the term is ambiguous and the contract should be strictly construed against defendant. We agree with plaintiffs' first contention that the term, "genital organs," is not ambiguous, but we agree with the trial court that, under the plain meaning of the term, policy coverage for internal organs of reproduction as well as external sexual organs is excluded.

■ An unambiguous contract must be enforced according to its express terms. Whether a contract is ambiguous is a question of law that may be reviewed *de novo.*

*Magnetic Copy Services, Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161 (Colo.App.1990).

■ Although a contract term is ambiguous if it is susceptible of more than one reasonable meaning, mere potential for more than one interpretation does not, of itself, create an ambiguity. *Allstate Insurance Co. v. Juniel*, 931 P.2d 511 (Colo.App.1996).

■ In construing the meaning of a term in an insurance policy and resolving the issue of ambiguity, a court may employ several steps. Among these initial steps is to seek evidence of an objective manifestation of intent, that is, what an objectively reasonable person would have intended in entering into the policy. This step also involves consideration of the purpose of the policy. If such objective evidence indicates the existence of only one reasonable construction of a term, no further construction is necessary. *Ackerman v. Foster*, 974 P.2d 1 (Colo.App.1998); *see also Regional Bank v. St. Paul Fire & Marine Insurance Co.*, 35 F.3d 494 (10th Cir.1994) (court looks to reasonable expectations of an ordinary policy holder to give effect to ordinary meaning of words); *cf. Allstate Insurance Co. v. Juniel, supra* (the context of the circumstances at issue may be considered in determining whether policy term is ambiguous).

■ Although the court may presume that the parties intended to give the term its plain and ordinary meaning, if the policy does not define the term at issue, construction of the term may also depend upon whether such term is used ambiguously within the context of the policy. *Allstate Insurance Co. v. Juniel, supra.*

Here, plaintiffs argue that the common understanding of the term "genital organs" does not encompass internal organs of reproduction. They assert that because they, as laypersons, were unaware of a medical definition of "genital organs" contained in a medical dictionary that expressly includes internal reproductive organs, their belief that the term included only external sexual organs reflects the reasonable understanding of persons of ordinary intelligence.

To support their assertion that the common understanding of the term "genital organs" includes only external sexual organs and not internal organs of reproduction, plaintiffs rely on the standard dictionary definition of the term "genitalia." However, although the term "genitalia" is defined as "organs of the reproductive system, especially external genital organs," *see American Heritage Dictionary* 549 (1969), such definition does not, *ipso facto,* exclude internal organs of reproduction.

More importantly, the issue here is construction, not of the term "genitalia," but instead, of the term "genital organs." And, even by the standard dictionary definition, "genitalia" are merely a subset of the broader term, "genital organs." That is, although all "genitalia" constitute "genital organs," not all "genital organs" are "genitalia."

Furthermore, according to the dictionary, "genital" is defined as "generative; of, relating to, or being a sexual organ." The dictionary further defines "generative" as "having the power or function of generating, propagating, originating, producing, or reproducing," and uses as an example "generative organs," thus referring to *all* reproductive organs, internal as well as external. *Webster's Third International Dictionary* 945 (1976).

Similarly, and consistent with the standard dictionary definition, a recognized medical dictionary defines "genitals" as "organs of generation; reproductive organs." *Am.Jur. Proof of Facts 3d: Taber's Cyclopedic Medical Dictionary* 728 (16th ed.1989).

Thus, it is commonly understood, based on both standard and medical dictionaries, that "genitals" include all organs associated with reproduction, including external genitalia and internal reproductive organs. Moreover, although none of these definitions specifically names such internal organs, it also is within the general knowledge and common understanding of a person of ordinary intelligence that the uterus, uterine tubes, and ovaries, removed during Kimberly's surgery, are organs of reproduction and, therefore, would be included in the definition of genital organs, whether defined by a standard dictionary or a medical dictionary.

■ Indeed, as the trial court found, the rider expressly refers to organs in the plural, referencing all genital organs of the female, not just the genitalia or sexual organs. Thus, because the definition of "genital organs" encompasses the internal organs of reproduction, the exclusion rider excludes coverage of plaintiffs' claim.

We further note that both parties were aware that the underlying reason for the rider was Kimberly's diagnosis of and treatment for dysplasia, a condition affecting the cervix, an internal reproductive organ. Under these circumstances, plaintiffs' assertion that "genital organs" should be defined so as to exclude internal reproductive organs is inconsistent with their understanding of the reason for which the rider was executed. *See Ackerman v. Foster, supra.*

## III.

Plaintiffs contend that, even if the trial court properly dismissed their claim for breach of contract, nevertheless, the court erred in dismissing the complaint in its entirety because it did not specifically determine that they had not stated a claim based on negligent misrepresentation. However, although the trial court did dismiss plaintiffs' complaint without considering their claim of negligent misrepresentation, because this determination is a question of law and the same standards for determining such motion apply to both the trial court and the appellate court, we address plaintiffs' contention here. On two separate and independent bases, we conclude that the complaint was properly dismissed. *See Shapiro & Meinhold v. Zartman,* 823 P.2d 120 (Colo.1992).

■ Negligent misrepresentation may occur if a person, in the course of his or her business, profession, or employment, supplies false information to another for guidance in his or her business transactions, and the other suffers a pecuniary loss caused by justifiable reliance upon the false information. *See Broderick Investment Co. v. Strand Nordstrom Stailey Parker, Inc.,* 794 P.2d 264 (Colo.App.1990).

## A.

■ A claim for negligent misrepresentation applies only if there has been a misrepresentation of an existing fact. Such claim cannot be based solely on the nonperformance of a promise to do something at a future time. *High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469 (Colo.App. 1992).

■ Here, plaintiffs alleged a claim for negligent misrepresentation based on statements made by defendant's representative that the exclusion rider would be lifted automatically after a year if Kimberly was symptom and treatment free for that time. Plaintiffs allege that they reasonably relied on the agent's representations and that, if they had been told differently, then they would not have purchased this insurance policy from defendant. Therefore, they argue, because Kimberly was symptom and treatment free for a year, the exclusion rider should have been lifted as promised by the representative, and, thus, should be considered inapplicable to their claim.

> However, the rider expressly states that
> Reconsideration period: 1 YEAR
> Rider(s) MAY BE reconsidered when treatment and symptom free for the period indicated above, but only upon written request with a current application from the insured. (capitalization in original)

Even accepting as true the allegations of the complaint—that defendant's representative had told plaintiffs that the rider would be lifted automatically in a year—because such promise was for a future act and did not misrepresent an existing fact, it cannot be the basis of a claim for negligent misrepresentation.

## B.

■ As a general rule, the acts performed or statements by an agent within the scope of real or apparent authority are binding on the principal regardless whether the principal has actual knowledge of the agent's act. *Life Investors Insurance Co. v. Smith*, 833 P.2d 864 (Colo.App.1992). However, if an insured has a copy of his or her insurance policy, an oral misrepresentation which contradicts the express terms of the policy will not be imputed to the insurance company. This is because the insured, under these circumstances, is presumed to have knowledge of the restrictions stated in the policy. *Pete's Satire, Inc. v. Commercial Union Insurance Co.*, 698 P.2d 1388 (Colo.App.1985), *aff'd sub nom. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239 (Colo.1987).

■ Here, contrary to plaintiffs' claim as to the oral representations made to them, the written terms of the policy and exclusion rider provided to them plainly states that the rider may be reconsidered only upon a written request by the insured. Because the language of the rider clearly states such condition for reconsideration and contains no language that the rider would be lifted automatically, plaintiffs could not have reasonably relied upon any oral statements to the contrary. Thus, because plaintiffs had the requirements for lifting the exclusion rider in writing and do not allege that they applied to have it removed, the rider was still in effect at the time of plaintiffs' claim and judgment in favor of defendant was proper as a matter of law.

The judgment is affirmed.

Judge METZGER and Judge CRISWELL concur.